Filed 12/3/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TONY ALLEN DENARD,<br><br>    Defendant and Appellant. | B253464<br><br>(Los Angeles County<br>Super. Ct. No. NA095733) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tomson T. Ong, Judge.  Affirmed in part and reversed in part with directions.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jaime L. Fuster and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————

Tony Denard appeals from the judgment entered following a jury trial in which he was convicted of one count of second degree commercial burglary in violation of Penal Code section 459.[1]  The court found allegations that appellant had suffered two prior foreign serious or violent felonies true.  (§§ 1170.12, subd. (b), 667, subds. (b)–(j).)  In addition, the court found that appellant had served six prior prison terms within the meaning of section 667.5, subdivision (b) and section 1203, subdivision (e)(4).  Appellant was sentenced to an aggregate term of 11 years in state prison, consisting of a base term of six years (the high term of three years doubled for a strike prior) plus five years consecutive for five separate one-year prison priors.

Appellant contends (1) his constitutional right not to testify was violated when, during argument to the jury, the prosecutor commented on appellant's failure to testify, and (2) the sentence imposed by the trial court was in error because the prosecution failed to prove that appellant's prior burglary and manslaughter convictions in Florida constituted strikes under California's "Three Strikes" law.

We conclude the comment on appellant's silence constituted harmless error, and we therefore affirm the conviction.  However, we reverse the trial court's finding that the Florida burglary conviction constituted a strike because it is unsupported by substantial evidence.  We also reverse the court's determination that the Florida manslaughter conviction constituted a strike because it was necessarily based on factual findings that were not established by the conviction itself and thus violated the Sixth Amendment.  Accordingly, we remand the matter for resentencing.

## FACTUAL BACKGROUND

During the night of July 21, 2012, the Ace Hardware store on Anaheim Street in Long Beach was burglarized.  The store had 12 surveillance cameras, which captured videos from inside and outside the store that night.  In one of the videos appellant could be seen arriving at the back of the store on a bike pulling a small cart containing tools.

---

[1] Undesignated statutory references are to the Penal Code.

2

Appellant opened the meter box on the wall and drilled a large hole, through which he climbed into the store. Once inside, appellant covered his face with his shirt and sprayed paint on the lenses of a number of the security cameras. But as he was spraying one of the cameras, the shirt covering his face dropped down and the camera captured an image of his face.

Appellant was in the store for over two hours. The surveillance video showed appellant removing merchandise from the shelves that he put in large plastic bags and took out of the store. The merchandise appellant took had a wholesale value between $15,000 and $16,000. Appellant also stole an employee's wallet out of a locker.

In May 2013, almost a year after the burglary, George Evans, a police officer with the City of Long Beach, received a citywide bulletin regarding the burglary of the Ace Hardware store. The bulletin included a picture of the suspect's face taken from the surveillance video. Sometime after receiving the bulletin, Officer Evans came across appellant standing outside a doughnut shop on Cherry Avenue in Long Beach. The officer immediately recognized appellant as the person in the picture from the surveillance video. Officer Evans made contact with appellant and took appellant's picture. Appellant gave the officer the address of the residence where he had lived with his ex-wife, Maria Rosa.

Police interviewed Rosa and showed her the picture of the suspect from the surveillance video. On seeing the picture, Rosa sighed and asked, "What did he do?" She then told the officers the man in the photo "look[ed] like Tony." Sometime later Rosa viewed the surveillance video and identified appellant as the person in the video.

Rosa had great difficulty testifying against appellant, a man she had known for over 25 years and admitted she loved because they had a daughter and grandchild together. Nevertheless, Rosa testified at trial that she had had no difficulty identifying appellant from the picture police showed her. And at the preliminary hearing as well as at trial, Rosa testified there was no doubt in her mind that the man in the video was appellant.

3

## DISCUSSION

I. **The Prosecutor's Argument Violated Appellant's Constitutional Right Not to Testify, But the Error Was Harmless**

Appellant did not testify in his own behalf and contends that remarks made by the prosecutor in argument to the jury were direct comments on appellant's decision not to testify. Appellant asserts that the prosecutor's misconduct violated appellant's Fifth and Fourteenth Amendment rights pursuant to *Griffin v. California* (1965) 380 U.S. 609, 615 [85 S.Ct. 1229, 14 L.Ed.2d 106] (*Griffin*), requiring reversal. We hold that the prosecutor's remarks constituted *Griffin* error. However, based on the overwhelming evidence of appellant's guilt, we conclude the error was harmless beyond a reasonable doubt.

### A. *Relevant Background*

In closing argument to the jury, the defense argued that Rosa was in no better position than the jury to decide whether the person in the surveillance video was the defendant. In response, near the end of rebuttal, the prosecutor argued: "The defendant clearly does not want to take responsibility for his actions. He has put it upon [Rosa] to testify to get himself convicted. He has not taken responsibility himself. That is the kind of man he is. And that is typical of someone who is using or who has used [drugs], as [Rosa] testified to. There is no accountability, no responsibility, and that's why he cruelly made [Rosa] testify in identifying him, yet again."

The defense neither objected nor requested an admonition regarding the prosecutor's statements.

### B. *The Prosecutor's Remarks Constituted* Griffin *Error*

Appellant contends that the prosecutor's argument could have been understood by the jury only as a comment on appellant's silence, and thus constituted *Griffin* error. We agree.

As a preliminary matter, respondent contends that appellant forfeited any claim regarding the prosecutor's argument because he failed to object and request an

4

admonition when the improper remarks were made. "When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection. Otherwise no claim is preserved for appeal. [Citation.]" (*People v. Morales* (2001) 25 Cal.4th 34, 43–44; *People v. Tafoya* (2007) 42 Cal.4th 147, 184.) Nevertheless, an appellate court may exercise its discretion to review a claim affecting the substantial rights of the defendant despite forfeiture for failure to raise the issue below. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7; *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1525 (*Sanchez*); see Pen. Code, § 1259 [an "appellate court may, without exception having been taken in the trial court, review any question of law involved . . . at the trial . . . which affected the substantial rights of the defendant"].) Because the *Griffin* error implicates appellant's "substantial rights" in this case, we exercise our discretion to address the merits of his claim.[2]

"'Under the Fifth Amendment of the federal Constitution, a prosecutor is prohibited from commenting directly or indirectly on an accused's invocation of the constitutional right to silence.' (*People v. Lewis* (2001) 25 Cal.4th 610, 670.)" (*People v. Tafoya*, *supra*, 42 Cal.4th at p. 184; *Griffin*, *supra*, 380 U.S. at pp. 614–615.)

"'[A] prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be

---

[2] Appellant seeks to avoid forfeiture by arguing that trial counsel provided constitutionally inadequate assistance of counsel in failing to object and request an admonition. "It is fundamental that 'a defendant claiming ineffective assistance of counsel must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome.' (*People v. Davis* (1995) 10 Cal.4th 463, 529.)" (*People v. Memro* (1995) 11 Cal.4th 786, 818; *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 [104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674].) Because, as discussed below, we find the *Griffin* error in this case to be harmless, appellant cannot meet his burden of showing a reasonable probability of a different outcome had trial counsel made a timely objection. Accordingly, appellant's claim of ineffective assistance of counsel fails.

provided *only* by the defendant, who therefore would be required to take the witness stand.' [Citation.]" (*People v. Thomas* (2012) 54 Cal.4th 908, 945 (*Thomas*).) Where it is "reasonably probable" that the prosecutor's comments misled the jury "into drawing an improper inference regarding defendant's silence," the remarks will be deemed to constitute *Griffin* error. (*People v. Medina* (1995) 11 Cal.4th 694, 756; see *People v. Clair* (1992) 2 Cal.4th 629, 663; *People v. Vargas* (1973) 9 Cal.3d 470, 478 (*Vargas*) [in determining whether *Griffin* error has occurred, focus is on extent to which comment increased jury's inclination to treat defendant's silence as indication of guilt].) However, "the rule prohibiting comment on defendant's silence does not extend to comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses." (*People v. Medina*, *supra*, 11 Cal.4th at p. 755; *People v. Taylor* (2010) 48 Cal.4th 574, 633; *People v. Hovey* (1988) 44 Cal.3d 543, 572.)

In *Thomas*, our Supreme Court found no *Griffin* error where the prosecutor's "comments were framed in terms of the failure to call some person *other than defendant* who would testify that defendant 'was with me.'" (*Thomas*, *supra*, 54 Cal.4th at p. 945.) But where the prosecutor refers specifically to the defendant's actions, "there is a reasonable likelihood that a jury would construe or apply the prosecution's statement to mean that defendant refused to testify in front of the jury." (*Sanchez*, *supra*, 228 Cal.App.4th at p. 1528.) Thus, in *Sanchez* the court found the prosecutor's comments that the defendant was "'hiding from all of you'" could be interpreted only as referring to "*the defendant*, as opposed to defendant's *defense* or *case*," and thereby crossed the line into impermissible comment on defendant's silence. (*Ibid*.) Similarly, in *People v. Modesto* (1967) 66 Cal.2d 695, 710 (disapproved on other grounds in *Maine v. Superior Court* (1968) 68 Cal.2d 375, 383, fn. 8), the court found *Griffin* error where the prosecutor argued to the jury that the defendant, who was the only person who knew the facts, was sitting in the courtroom, "'and just sitting.'" (See also *Vargas*, *supra*, 9 Cal.3d at p. 476.)

Here, the prosecutor's statements that "defendant clearly does not want to take responsibility for his actions" and "[h]e has put it upon [Rosa] to testify" against him cannot reasonably be interpreted as anything other than a comment on appellant's silence, despite respondent's claim that the remarks were merely aimed at bolstering Rosa's credibility. (See *People v. Murtishaw* (1981) 29 Cal.3d 733, 757–758 [*Griffin* error to observe that incriminating evidence was "'uncontradicted'" by defendant] disapproved on other grounds in *People v. Boyd* (1985) 38 Cal.3d 762, 772773; *Vargas*, *supra*, 9 Cal.3d at p. 476 [*Griffin* error to observe that defendant failed to "'deny'" his presence at the crime scene].) Like the improper comments in *Sanchez* and *Modesto*, the prosecutor's argument represented nothing less than a bare assertion that appellant, who knew the facts, had failed to come forward and "take[] responsibility himself."

Accordingly, like the improper comments in *Sanchez* and *Modesto*, the prosecutor's statements here constituted *Griffin* error. However, in light of the overwhelming evidence of appellant's identity as the perpetrator in this case, we conclude the error was harmless beyond a reasonable doubt.

The effect of *Griffin* error is assessed under the standard of prejudice set forth in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824] (*Chapman*).[3] That is, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Id*. at p. 24; *Sanchez*, *supra*, 228 Cal.App.4th at p. 1534; *Vargas*, *supra*, 9 Cal.3d at p. 478.) That standard is met when the evidence of defendant's guilt is so strong as to leave no doubt that the jury would have reached the same result in the absence of the error. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1223 ["given the overwhelming evidence of defendant's guilt," errors harmless under *Chapman* or *People v. Watson* (1956) 46 Cal.2d 818, 836, standard of

---

[3] *Chapman* itself involved a violation of the rule in *Griffin* and applied a harmless error analysis to determine whether the error required reversal. (See *Chapman*, *supra*, 386 U.S. at pp. 20, 24.)

review]; *People v. Booker* (2011) 51 Cal.4th 141, 186; *Sanchez*, *supra*, 228 Cal.App.4th at p. 1535.)

Our Supreme Court has held most indirect *Griffin* error—where the prosecutor's remarks contain no references, express or implied, to defendant's silence—to be harmless. (*People v. Medina*, *supra*, 11 Cal.4th at p. 756; *Vargas*, *supra*, 9 Cal.3d at pp. 478–481.) Indeed, as *Vargas* recognized, "in order for *Griffin* error to be prejudicial, the improper comment or instruction must either 'serve to fill an evidentiary gap in the prosecution's case,' or 'at least touch a live nerve in the defense . . . .' [Citations.]" (*Vargas*, *supra*, 9 Cal.3d at p. 481.)

The only contested issue at trial in this case was the identity of the perpetrator of the Ace Hardware burglary. Appellant contends that "the defense created doubt about whether appellant was the perpetrator of the burglary by showing, through cross-examination, that appellant's unique-looking nose, missing fingers, and distinctive way of walking did not match that of the perpetrator. The defense further tried to create doubt through the lack of DNA evidence." But the jury had evidence before it of Rosa's unequivocal identification of appellant as the person in the video on four separate occasions, including her admission at trial that there had been no doubt in her mind that appellant was the man in the video. In addition, Officer Evans testified that the first time he saw appellant, he immediately recognized him as the man in the photo taken from the surveillance video. And defense counsel repeatedly admitted a strong resemblance between appellant and the perpetrator. Finally, the jury could determine for itself whether the man in the courtroom, whose picture Officer Evans had taken at the doughnut shop, was the same man seen in the video burglarizing the Ace Hardware store.

In light of the overwhelming evidence of appellant's identity as the perpetrator in this case, we are convinced beyond a reasonable doubt that the jury would not have

reached a different verdict in the absence of the prosecutor's remarks. Accordingly, under *Chapman*, the *Griffin* error was harmless beyond a reasonable doubt.[4]

## II. Substantial Evidence Does Not Support the Trial Court's Determination That Appellant's Prior Florida Burglary Conviction Constituted a Strike Under California's Three Strikes Law

### A. *Relevant Background*

In the bifurcated trial on appellant's prior convictions, the trial court found true the allegation that appellant had suffered a prior conviction for burglary of a dwelling in Florida and ruled that the conviction constituted a strike under California law. (§§ 1170.12, 667, subd. (d).) The Florida record of conviction admitted into evidence consisted of a document entitled, "Uniform Commitment to Custody of Department of Corrections," an information charging appellant with burglary of a dwelling,[5] a document

---

[4] Although we have found the *Griffin* error in this case was not prejudicial, we emphasize our conclusion that the argument violated appellant's constitutional right not to testify and was entirely unnecessary. As the court in *Sanchez* declared, "'Despite our conclusion that the misconduct here was nonprejudicial, we feel compelled to forewarn prosecutors that we have too often of late been faced with the task of determining whether unnecessarily zealous prosecutors have committed misconduct, and if so, determining whether, on the basis of the whole record, that misconduct was prejudicial. Frequently, it seems that deputy district attorneys see their sole function as winning cases even at the expense of a fair trial for the defendant and the proper administration of justice in the courts. . . . [¶] . . . [W]hile we are not inclined to find such conduct prejudicial if the record does not warrant such a conclusion, we feel compelled to warn prosecutors that they cannot continue with impunity to engage in such conduct thinking that appellate courts will save them by applying the harmless error rule. . . .'" (*Sanchez*, *supra*, 228 Cal.App.4th at p. 1537, quoting *People v. Lambert* (1975) 52 Cal.App.3d 905, 911–912.)

[5] The information alleged: "TONY A. DENARD in the County of Palm Beach and State of Florida, on the 17th day of JANUARY in the year of our Lord, one thousand nine hundred and EIGHTY THREE in the County and State aforesaid, unlawfully and without consent did then and there enter or remain in a structure, to-wit: a dwelling, the property of SHARON WEHRLE, with intent then and there to commit an offense therein, to-wit: Theft, by then and there knowingly obtaining or using or endeavoring to obtain or use the property of another, with intent to either temporarily or permanently deprive the

9

entitled, "Judgment," and a document entitled, "Sentence." The judgment indicates appellant was convicted of second degree burglary of a dwelling. None of the four documents offered to prove the strike describes the facts of the underlying crime, nor was there any testimony to that effect.

**B.** ***The Fact of Appellant's Florida Conviction for Burglary of a Dwelling Does Not by Itself Establish the Crime Was a Serious Felony Under California Law***

Appellant contends and respondent concedes that the evidence is insufficient to support the trial court's finding that appellant's Florida burglary conviction constitutes a strike under California law. We agree.

Under California's Three Strikes law, a defendant's sentence is enhanced upon proof that the defendant has been previously convicted of a "strike"—a violent felony as defined in section 667.5, subdivision (c), or a serious felony as defined in section 1192.7, subdivision (c). (§§ 667, subd. (f)(1), 1170.12, subd. (d)(1).) "'In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California'" (*People v. Woodell* (1998) 17 Cal.4th 448, 453 (*Woodell*)), and the statutory elements of the foreign crime must include all the elements of the California strike offense (*People v. Warner* (2006) 39 Cal.4th 548, 552–553.) "There is, however, no guarantee the statutory definition of the crime in the other jurisdiction will contain all the necessary elements to qualify as a predicate felony in California." (*Woodell*, at p. 453.) Thus, if the foreign law can be violated in different ways, and "'the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the

---

said owner or owners or any other person not the defendant or defendants named herein of the property or benefit therefrom, contrary to Florida Statute 810.02(1)(3)."

least offense punishable under the foreign law.' [Citation.]" (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262, quoting *People v. Guerrero* (1988) 44 Cal.3d 343, 355.)**6**

The parties agree that pursuant to the least adjudicated elements test, appellant's Florida burglary conviction does not qualify as a strike under California law.

"The elements of first degree burglary in California are (1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony. (§§ 459, 460; *People v. Anderson* (2009) 47 Cal.4th 92, 101.)" (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1261.) First degree burglary is listed as a serious felony under section 1192.7, subdivision (c)(18). First degree burglary also qualifies as a violent felony under section 667.5, subdivision (c)(21) "wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary."

The Florida statute under which appellant was convicted defined burglary as: "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." (Fla. Stats. Ann. § 810.02(1)(a).)

As appellant correctly asserts, the Florida statute is more permissive than California's burglary law, encompassing conduct which constitutes both first and second degree burglary in California as well as lesser offenses. Thus, unlike California law, a burglary may be committed under Florida law by simply remaining in a dwelling after forming the requisite criminal intent. (Compare *Thorpe v. State* (Fla.Dist.Ct.App. 1990)

---

**6** Courts refer to this presumption as the "least adjudicated elements test." (See, e.g., *People v. Rodriguez, supra*, 17 Cal.4th at p. 262; *People v. Guerrero, supra*, 44 Cal.3d at pp. 354–355. ) "Under that approach, only the foreign jurisdiction's statutory or common law definition of the offense may be considered to determine if the offense would be a serious felony in California. Only the elements of the offense which must be proved to sustain a conviction of the offense are considered in deciding if the offense 'includes all of the elements of the particular felony as defined under California law.' (§ 667.5, subd. (f).)" (*People v. Myers* (1993) 5 Cal.4th 1193, 1199.)

11

559 So.2d 1285, 1286 [burglary conviction upheld where defendant remained in residence after occupant withdrew consent for entry] with *People v. Hill* (1967) 67 Cal.2d 105, 119 [in California, "burglary cannot be committed unless the specific intent exists at the time of entry"]; *People v. Montoya* (1994) 7 Cal.4th 1027, 1052.) Here, the record of appellant's Florida conviction for second degree burglary contains no facts regarding appellant's intent when he entered the property. Because it cannot be determined when appellant formed the requisite criminal intent, the Florida burglary conviction cannot qualify as a strike in California under the least adjudicated elements test.

Further, a burglary can be committed under Florida law by entering or remaining in "a dwelling, a structure, or a conveyance" regardless of occupancy, whereas in California first degree burglary can be committed only if the property is inhabited. (§ 460.) "As used in section 460, '"inhabited" means currently being used for dwelling purposes, whether occupied or not.'" (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1297.) By contrast, under Florida law "a structure's design or suitability for habitation, rather than actual occupancy or intent to occupy, controls in determining whether a structure constitutes a dwelling." (*Young v. State* (Fla. 2013) 141 So.3d 161, 166; *Perkins v. State* (Fla. 1996) 682 So.2d 1083, 1084.) In the present case, the record of appellant's Florida conviction for second degree burglary of a dwelling contains no indication whether the dwelling appellant burglarized was "inhabited" when he committed the crime. For this reason as well, appellant's Florida burglary conviction cannot qualify as a strike in California under the least adjudicated elements test.

III. **The Trial Court's Determination That the Florida Manslaughter Conviction Qualifies as a Strike Is Unsupported by Substantial Evidence and Violated the Sixth Amendment**

A. *Relevant Background*

In the court trial on appellant's prior convictions, the trial court found true the allegation that appellant had suffered a 1993 conviction in Florida for second degree felony manslaughter. Appellant argued that the Florida manslaughter conviction does not

12

qualify as a strike offense in California because under Florida law manslaughter is not necessarily a violent felony.  The prosecutor appeared to agree, stating that to the extent Florida law includes within the definition of manslaughter the killing of a human being by the culpable negligence of another, it seems to be more similar to California's involuntary manslaughter offense.  Nevertheless, the court ruled that the conviction constituted a strike under California law.  (§§ 1170.12, 667, subd. (d).)

The Florida record of conviction admitted into evidence consisted of a document entitled, "Uniform Commitment to Custody of Department of Corrections," an information charging appellant with manslaughter,[7] a document entitled, "Judgment," a document entitled, "Sentence," a "Sentencing Guidelines Scoresheet," a certificate to be attached to the commitment form, and a probable cause affidavit alleging facts in support of appellant's arrest for first degree murder and armed burglary.  Only the probable cause affidavit describes the facts of the underlying crime.

**B.** ***The Fact of Appellant's Florida Conviction for Manslaughter Does Not by Itself Establish the Crime Was a Serious Felony Under California Law***

A violation of the Florida manslaughter statute may constitute either voluntary or involuntary manslaughter under California law.  Accordingly, appellant's Florida manslaughter conviction does not automatically qualify as a strike under California law.

Florida law defines second degree felony manslaughter as the "killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . in cases in which such killing shall not be excusable homicide or

---

[7] The information charged:  "TONY DENARD on or between JUNE 23, 1988 and JUNE 27, 1988, in the County of Palm Beach and State of Florida, did then and there unlawfully and by his own act, procurement or culpable negligence, kill JOHN MORRISON by cutting JOHN MORRISON with a sharp instrument, without lawful justification and under circumstances not constituting excusable homicide or murder, contrary to Florida Statute 782.07.  (2 DEG FEL)"

murder . . . ." (Fla. Stats. Ann. § 782.07(1).) In California, voluntary manslaughter is defined as "the unlawful killing of a human being without malice . . . [¶] . . . upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) Involuntary manslaughter is a killing that occurs "in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b); *People v. Lewis* (2001) 25 Cal.4th 610, 645.) "'The words "without due caution and circumspection" refer to criminal negligence—unintentional conduct which is gross or reckless, amounting to a disregard of human life or an indifference to the consequences. [Citation.]'" (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1027.) Voluntary manslaughter is a "serious felony" under section 1192.7, subdivision (c)(1), and thus qualifies as a strike, while involuntary manslaughter is not considered to be a "violent" or "serious" felony, and thus does not qualify as a strike. (§§ 667.5, subd. (c), 1192.7, subd. (c); *People v. Skiles* (2011) 51 Cal.4th 1178, 1183, fn. 1.)

It is apparent that the Florida manslaughter statute under which appellant was convicted is broader than the California law, encompassing conduct that would satisfy the elements of involuntary as well as voluntary manslaughter in California. Therefore, on its face, the Florida statute does not demonstrate that appellant's manslaughter conviction qualifies as a strike under California law.

C. *The Florida Probable Cause Affidavit Could Not Be Used to Prove the Manslaughter Conviction Qualifies as a Strike Because It Did Not Constitute Part of the "Record of Conviction"*

The only way to determine whether appellant's second degree felony manslaughter conviction meets the elements of voluntary manslaughter in California, and thus qualifies as a strike, is by looking to the record of the prior conviction. (*People v. McGee* (2006) 38 Cal.4th 682, 691 (*McGee*).) For this, the People turn to the only document presented to the trial court that purports to describe the facts of the Florida crime: the probable cause affidavit. Respondent contends that the factual recitations in this document provide

14

substantial evidence establishing that the Florida manslaughter was committed "without malice and upon a sudden quarrel or heat of passion," i.e., voluntary manslaughter (§ 192, subd. (a)), and therefore qualifies as a strike conviction under California law.[8]

However, the affidavit was prepared by law enforcement for the purpose of obtaining an arrest warrant for the offenses of first degree murder and armed burglary. It thus sets forth a factual basis for arresting appellant for two crimes with which he was neither charged nor convicted. As such, the document cannot be considered part of the "record of conviction" and could not be used to prove appellant's manslaughter conviction constituted a strike under California law. (See *McGee*, *supra*, 38 Cal.4th at pp. 691–692; *People v. Trujillo*, *supra*, 40 Cal.4th at p. 179; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1125–1126.)

In determining whether a foreign conviction involves conduct that would qualify it as a strike in California, our Supreme Court has emphasized that "'[b]ecause the nature of the *conviction* is at issue, the prosecution is not allowed to go outside the record of conviction to "relitigat[e] the circumstances of a crime committed years ago . . . ."'" [Citations.] Instead, the relevant inquiry in deciding whether a particular prior conviction qualifies as a serious felony for California sentencing purposes is limited to an

---

[8] Appellant observes that the probable cause affidavit was not a court record made contemporaneously with the conviction, but rather is a summary of witness statements from the initial investigation of the case which was prepared for the purpose of obtaining an arrest warrant for appellant. Appellant thus contends that the probable cause affidavit was inadmissible hearsay outside of any exception which could not be used to establish that appellant's conviction qualifies as a strike under California law. We agree that the affidavit should have been excluded as inadmissible hearsay. (*Woodell*, *supra*, 17 Cal.4th at p. 458 ["normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction"]; *People v. Trujillo* (2006) 40 Cal.4th 165, 178 [excerpts from a probation report inadmissible as outside of any exception to the hearsay rule]; *People v. Reed* (1996) 13 Cal.4th 217, 230–231 (*Reed*).) However, appellant's failure to object to the document's admission below forfeits the claim on appeal. (Evid. Code, § 353; *People v. Jennings* (2010) 50 Cal.4th 616, 654; *People v. Harris* (2005) 37 Cal.4th 310, 335.)

examination of the record of the prior criminal proceeding to determine the nature or basis of the crime of which the defendant was *convicted*. (*People v. Woodell*, *supra*, 17 Cal.4th at pp. 454–461; *People v. Myers*[, *supra*,] 5 Cal.4th 1193, 1198–1201; see also *People v. Guerrero*, *supra*, 44 Cal.3d at p. 355 . . . .)" (*McGee*, *supra*, 38 Cal.4th at p. 691, second italics added.)

The court's focus in these cases has been the reliability of the documents in question to show "whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*McGee*, *supra*, 38 Cal.4th at p. 706.) In *Reed*, the court identified two types of documents that may be considered part of the "'record of conviction'" for purposes of proving a strike. As the term is used technically, the record of conviction would be "equivalent to the record on appeal [citation]." (*Reed*, *supra*, 13 Cal.4th at p. 223.) However, as more narrowly interpreted, the "'record of conviction'" refers "only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*Ibid*.)

Under either of these definitions, the Florida probable cause affidavit cannot be considered part of appellant's record of conviction and thus could not support the trial court's strike finding in this case. The affidavit, consisting of multiple layers of hearsay reciting the facts of uncharged crimes, could hardly be deemed a reliable account of the conduct underlying the offense for which appellant was convicted.

In this regard, the probable cause affidavit is wholly distinguishable from the affidavit the court in *People v. Saez* (2015) 237 Cal.App.4th 1177, 1197–1198 (*Saez*), found to be admissible under *McGee* to prove a strike. At issue in *Saez* was whether a prior Wisconsin conviction for false imprisonment while armed qualified as a strike in California. The trial court concluded that it did, relying on an affidavit of probable cause (a police officer's sworn statement) attached to the charging complaint which described the defendant's conduct in the commission of the offense as part of the record of the Wisconsin conviction. (*Saez*, at pp. 1192–1193.) *Saez* held that the affidavit could be considered for the (nonhearsay) purpose of determining the basis of the conviction,

16

because in entering his plea, Saez had explicitly stipulated that the criminal complaint, which included the affidavit, was the factual basis for his guilty plea. (*Id.* at pp. 1197–1198; *McGee*, *supra*, 38 Cal.4th at p. 706.)

Here, unlike the document in *Saez*, there is no indication the affidavit was attached to the information or was presented to the court at the time of the conviction. Moreover, there is no evidence appellant stipulated to or even acknowledged the facts alleged in the affidavit, much less that its contents were known to him at any time.[9] Under these circumstances, the Florida affidavit of probable cause cannot be deemed part of the record of appellant's conviction for second degree felony manslaughter, and the trial court could not rely on it in making its strike determination. (See *McGee*, *supra*, 38 Cal.4th at pp. 692, 706.)

**D.** ***Reliance on the Florida Probable Cause Affidavit in Determining That Appellant's Manslaughter Conviction Constitutes a Strike Violates the Sixth Amendment***

The United States Supreme Court has held that the Sixth and Fourteenth Amendments require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*); *Blakely v. Washington* (2004) 542 U.S. 296, 303–304 [124 S.Ct. 2531, 159 L.Ed.2d 403];

---

[9] *Saez* itself distinguished the facts before it from the instant case, explaining that "[u]nder different circumstances" it would find the police officer's statements were not part of the record of conviction and constituted inadmissible hearsay: "Saez pleaded guilty to the information, which, as the concurring opinion correctly points out, superseded the complaint. Thus, the complaint did not bear on the basis of the conviction—*until Saez stipulated to it as the factual basis for his plea*. Once he did, the officer's statements became evidence of the basis of the conviction and were admissible for that nonhearsay purpose, whatever principles might have otherwise barred reliance on them." (*Saez*, *supra*, 237 Cal.App.4th at p. 1198, fn. 18.)

17

*Cunningham v. California* (2007) 549 U.S. 270, 274–275 [127 S.Ct. 856, 166 L.Ed.2d 856]; *Descamps v. U.S.* (2013) 570 U.S. ___ [133 S.Ct. 2276, 2288, 186 L.Ed.2d 438, 456] (*Descamps*).)

The Supreme Court's most recent explication of this principle came in *Descamps*, in which an eight-justice majority concluded that serious Sixth Amendment concerns are implicated by a sentencing "court's finding of a predicate offense . . . [that goes] beyond merely identifying a prior conviction. Those concerns . . . counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime."[10] (*Descamps*, *supra*, 133 S.Ct. at p. 2288; *Shepard v. United States* (2005) 544 U.S. 13, 25 [125 S.Ct. 1254].)

---

[10] In a letter dated November 4, 2015, the Attorney General asserts that appellant forfeited any Sixth Amendment argument because no objection was made on constitutional grounds in the trial court or in appellant's opening brief. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 289–290 [failure to object on constitutional grounds forfeited claim that hearsay statements admissible under exception to the hearsay rule violated Sixth Amendment right to confrontation]; *People v. Williams* (1997) 16 Cal.4th 153, 250 [same]; *People v. Alexander* (2010) 49 Cal.4th 846, 922 [arguments first made in reply brief would be disregarded on appeal]; *People v. Newton* (2007) 155 Cal.App.4th 1000, 1005 [same].)

However, where an otherwise forfeited claim presents an important question of constitutional law or a substantial right, the appellate court may exercise discretion to review the claim. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7; In re S.B. (2004) 32 Cal.4th 1287, 1293; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6.) Our Supreme Court has held that "neither forfeiture nor application of the forfeiture rule is automatic. [Citation.]" (*People v. McCullough* (2013) 56 Cal.4th 589, 593.) As *Williams* observed, "An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. [Citations.] Indeed, it has the authority to do so. [Citation.] . . . Whether or not it should do so is entrusted to its discretion. [Citation.]" (*Williams*, *supra*, 17 Cal.4th at p. 162, fn. 6.) The issue in this case, involving an important issue of constitutional law, warrants an exception to the rule of forfeiture on appeal, and we decline to penalize appellant for his trial and appellate attorneys' failure to preserve and properly present the issue to this court. We therefore

At issue in *Descamps* was whether a California burglary prior constituted a conviction for "'generic'" burglary and thus qualified as an Armed Career Criminal Act (ACCA)[11] (18 U.S.C. § 924(e)) predicate offense.[12] (*Descamps*, *supra*, 133 S.Ct. at p. 2282.) The district court found that it did after reviewing the transcript of the plea colloquy in which the defendant had not objected to the prosecutor's statement describing certain facts of the crime. The Ninth Circuit affirmed, and, relying on its decision in *United States v. Aguila-Montes de Oca* (9th Cir. 2011) 655 F.3d 915, 940, held "that when a sentencing court considers a conviction under . . . [a] statute that is 'categorically broader than the generic offense,' —the court may scrutinize certain documents to determine the factual basis of the conviction." (*Descamps*, *supra*, 133 S.Ct. at pp. 2282–2283.) The Supreme Court reversed, holding that this kind of factfinding was impermissible because it "turns an elements-based inquiry into an evidence-based one." (*Id*. at p. 2287.) The court explained that one of the reasons for its "elements-centric, 'formal categorical approach'" is to "avoid[] the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." (*Ibid*.)

---

exercise our discretion to consider the Sixth Amendment issue presented by the trial court's strike determination.

[11] As *Descamps* explained: "The [ACCA] increases the sentences of certain federal defendants who have three prior convictions 'for a violent felony,' including 'burglary, arson, or extortion.' To determine whether a past conviction is for one of those crimes, courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." (*Descamps*, *supra*, 133 S.Ct. at p. 2281.)

[12] *Descamps* observed that section 459's broad sweep, which does not require an unlawful entry "in the way most burglary laws do," causes the California law to go "beyond the normal, 'generic' definition of burglary." (*Descamps*, *supra*, 133 S.Ct. at p. 2282.)

In addition to the broad Sixth Amendment implications, the Supreme Court identified two other serious concerns that arise when a sentencing court usurps a jury's factfinding function: "In case after case, sentencing courts following [the Ninth Circuit's approach] would have to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. . . . [¶] Still worse, the [Ninth Circuit's] approach will deprive some defendants of the benefits of their negotiated plea deals. Assume (as happens every day) that a defendant surrenders his right to trial in exchange for the government's agreement that he plead guilty to a less serious crime, whose elements do not match an ACCA offense. Under the Ninth Circuit's view, a later sentencing court could still treat the defendant as though he had pleaded to an ACCA predicate, based on legally extraneous statements found in the old record." (*Descamps*, *supra*, 133 S.Ct. at p. 2289.)

These additional concerns are particularly relevant in this case, where appellant's attempt to explain the basis for his plea in arguing that the Florida manslaughter conviction should not be considered a strike appears to have been ignored by the trial court.

After the briefing in this case, two appellate courts issued decisions in which they considered the impact of the United States Supreme Court's holding in *Descamps* on the California procedure for proof of prior convictions under *McGee*: *Saez*, *supra*, 237 Cal.App.4th 1177 (First Dist., Div. One) and *People v. Marin* (2015) 240 Cal.App.4th 1344 (Second Dist., Div. Four) (*Marin*).

In *Saez*, the court noted the conflict between the California and United States Supreme Courts "on the limits of a sentencing court's ability to review the record of a prior conviction in determining whether the conviction can be used to increase a sentence under a statutory sentencing-enhancing scheme," and held that the trial court's reliance on

20

the Wisconsin record of conviction was proper under *McGee* but violated the Sixth Amendment under the principles recognized in *Descamps*. (*Saez*, *supra*, 237 Cal.App.4th at p. 1195; *Marin*, *supra*, 240 Cal.App.4th at p. 1348.) In so holding, *Saez* concluded that "while *Descamps* did not explicitly overrule *McGee*," "this much is clear: when the elements of a prior conviction do not necessarily establish that it is a serious or violent felony under California law (and, thus, a strike), the court may not under the Sixth Amendment '"make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or what the jury in a prior trial must have accepted as the theory of the crime.' (*Descamps*, *supra*, 570 U.S. at p. ___ [133 S.Ct. at p. 2288].)" (*Saez*, *supra*, at pp. 1207–1208.)

*Marin* went a step further, expressly holding that "under *Descamps*, judicial factfinding authorized by [*McGee*], going beyond the elements of the crime to 'ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law' ([*McGee*, *supra*, 38 Cal.4th] at p. 706), violates the Sixth Amendment right to a jury trial."[13] (*Marin*, *supra*, 240 Cal.App.4th at p. 1348.)

In drawing its conclusion, *Marin* explained: "[I]t is no longer tenable to draw a distinction, in the words of *McGee*, 'between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior

[13] The court noted that the Supreme Court has not prohibited all judicial factfinding in ascertaining the statutory elements of the crime of which the defendant was convicted. (*Marin*, *supra*, 240 Cal.App.4th at pp. 1348–1349; *Descamps*, *supra*, 133 S.Ct. at p. 2285, fn. 2.) Thus, "in determining whether a prior conviction qualifies to increase a defendant's punishment," a trial court may consider, without violating the Sixth Amendment, the indictment, jury instructions, plea colloquy, and plea agreement to determine the elements of the prior offense. (*Marin*, at pp. 1348–1349 [trial court may consider documents approved in *Taylor v. United States* (1990) 495 U.S. 575 [110 S.Ct. 2143] and *Shepard v. United States*, *supra*, 544 U.S. 13]; *Descamps*, *supra*, 133 S.Ct. at p. 2288.)

21

conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute.' (*McGee*, *supra*, 38 Cal.4th at p. 709.) The type of factfinding permitted by *McGee* is virtually indistinguishable from the Ninth Circuit approach that the high court disapproved in *Descamps*. The Ninth Circuit approach permitted an examination of 'reliable materials' to determine '"what facts" can "*confident[ly]" be thought to underlie the defendant's conviction* in light of the "prosecutorial theory of the case" and the "facts put forward by the government." [Citation.]' (*Descamps*, *supra*, 133 S.Ct. at p. 2286, italics added.) Similarly, *McGee* permits an examination of the record of conviction to determine 'whether that record reveals whether the conviction *realistically may have been based on conduct* that would not constitute a serious felony under California law.' (*McGee*, *supra*, 38 Cal.4th at p. 706, italics added.) The two approaches—one based on facts 'confidently' believed to underlie the conviction, the other on facts that 'realistically' underlie the conviction—are in all relevant respects indistinguishable." (*Marin*, *supra*, 240 Cal.App.4th at p. 1362.)

*Marin* continued, concluding that *Descamps* is the extension of *Apprendi* our Supreme Court contemplated in *McGee*. "The California procedure for determining whether prior convictions qualify as strikes, insofar as it is based on judicial factfinding beyond the elements of the offense, is incompatible with the United States Supreme Court's view of the Sixth Amendment right to a jury trial as articulated in *Descamps*. In short, such judicial factfinding, which looks beyond the elements of the crime to the record of conviction to determine what conduct 'realistically' underlay the conviction, violates the Sixth Amendment right to a jury trial." (*Marin*, *supra*, 240 Cal.App.4th at p. 1363.)

We agree with the conclusions of the courts in *Saez* and *Marin*, and hold that under *Descamps* the Sixth Amendment prohibits reliance on the Florida probable cause affidavit as the basis for determining that appellant's second degree felony manslaughter conviction constitutes a strike under California law. The mere fact of the Florida manslaughter conviction in this case does not establish the conviction qualifies as a strike

because a violation of the Florida manslaughter statute may constitute either voluntary or involuntary manslaughter under California law.  Accordingly, the trial court's strike determination based on appellant's Florida manslaughter conviction is unsupported by substantial evidence.

## DISPOSITION

The trial court's determinations that the Florida convictions for burglary and manslaughter constitute strikes are reversed, and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

23