Filed 2/20/25  P. v. McRath CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097505 |
| v. | (Super. Ct. No. 20FE017838) |
| ADRIAN RAMON McRATH et al., | |
| Defendants and Appellants. | |

A jury convicted Adrian Ramon McRath of murder and the unlawful possession of a firearm.  The jury convicted Dominic F. Smith of robbery.

On appeal, McRath contends the evidence is insufficient to support his convictions, the trial court should not have imposed an upper term sentence on his firearm possession conviction, and his abstract of judgment must be corrected to reflect that he was not convicted of first degree murder.  Smith contends the trial court erred in imposing an upper term sentence on his robbery conviction.

We conclude the upper term sentences on McRath's firearm possession conviction and Smith's robbery conviction were not imposed in a manner consistent with current law, and that McRath's abstract of judgment has a clerical error.  McRath's other

1

contentions lack merit. We will affirm the convictions of McRath and Smith, vacate their sentences, and remand for resentencing. Although updated abstracts of judgment may issue following resentencing, we will direct the trial court to correct McRath's abstract of judgment to the extent necessary.

## BACKGROUND

On the evening of September 2, 2020, Smith, McRath, McRath's girlfriend F.W., and Kevin S. drove to an America's Best Value Inn where Kevin was staying. F.W. drove them in an SUV belonging to A.K. Shelvin Sharma was Kevin's cousin and stayed at the Inn with Kevin.

Inn surveillance videos showed that at 9:44 p.m. three individuals exited an SUV and approached room 119. Three minutes later, a person fell to the ground outside the room. An individual wearing a black, long-sleeve sweatshirt with a white box on the back and dark pants ran to the SUV and opened the front passenger door. A person with long hair wearing a red shirt and black shorts followed. The person in the black sweatshirt ran back to the Inn room with his arm raised just above his waist and an object in his hand. A third person, wearing a dark shirt and light-colored pants, ran to the driver's side rear passenger door of the SUV with something that appeared to be a bag, followed by the person in the black sweatshirt, who got in the front passenger seat. The person wearing the red shirt got in the passenger's side rear seat. The SUV sped away at 9:48 p.m.

A deputy sheriff dispatched to the Inn found Sharma on the ground outside room 119 with a gunshot wound to his back. Sharma died as a result of the wound. Detectives located the SUV, and Smith's and F.W.'s fingerprints were found on the vehicle. Data from cell phones associated with McRath and F.W. showed those cell phones were in the area of the shooting at 9:48 p.m. on September 2, 2020.

Smith and Kevin were taken into custody the morning of September 3. Smith wore a red shirt and black shorts. He had very long dread locks. Kevin wore a dark blue

2

shirt and tan pants. F.W. purchased two bus tickets from Sacramento to Texas shortly after the shooting. She and McRath were arrested in Texas in November 2020.

At trial, the People presented evidence that in August 2020, Smith and A.K. submitted an application for unemployment benefits for Michael Hunt, an inmate at Solano State Prison, using Kevin's address as the mailing address. Kevin admitted he helped A.K. engage in fraud involving Employment Development Department (EDD) benefits. As of August 27, EDD paid $21,900 in benefits to Hunt's EDD account. Benefits were typically sent in the mail in the form of a bank debit card. In August and September, there were communications between the Facebook accounts for Smith and Hunt about benefits, sending Hunt money, and waiting for a card. On September 1, a message from Smith's account to Hunt's account stated, "hoping your shit lands today. Waiting on the mail."

According to A.K., on September 2 Smith repeatedly asked Kevin where the EDD card for Hunt was, and Kevin acted nervous and jittery. Kevin likewise testified that Smith repeatedly asked him about the EDD card for Hunt.

Kevin provided the following testimony at trial. Smith, Smith's friend who was called Ru, and the friend's girlfriend gave Kevin a ride to the Inn where Kevin was staying. Ru's girlfriend drove. Ru sat in the front passenger seat. He wore a black hooded sweatshirt. Smith, Ru and Kevin went inside Kevin's Inn room while Ru's girlfriend remained in the car. When Kevin was in the bathroom, he saw Sharma run out the door; Kevin heard a gunshot, saw Sharma fall, and saw Ru holding a gun. Ru pointed the gun at Kevin and told Kevin to get in the car. Smith took Kevin's bank card and pin number and cell phone.

Consistent with his trial testimony, Kevin told detectives the shooter wore black clothing and sat in the front passenger seat of the SUV. But he told detectives the shooting happened because of money. In particular, he said Smith owed Hunt money, Smith and Smith's friend found out Kevin had money at the Inn, so they drove to the Inn,

3

and Sharma was shot when Sharma tried to leave the room. Kevin told detectives Smith took Kevin's bank card and threw Kevin's cell phones out of the car.

Kevin did not identify McRath in photographic lineups. He said he used drugs before going to the Inn on the night of the shooting, and again when detectives first interviewed him. He admitted he told a number of lies to detectives. He also admitted the story he told at trial differed from the story he told detectives.

Before trial, F.W. told detectives she drove Smith, McRath, and an Indian man whose name she did not know to America's Best Value Inn on September 2. She said they went to the Inn to pick up the card. She reported that she remained in the car while Smith and two others went inside; she saw the door open and someone running with a bag. She said McRath shot the victim. The People presented evidence of a September 11 Facebook message from an account associated with F.W. stating, "shit went left a. I had to shake Sac . . . I did se [*sic*] . . . shit an it was sloppy. Now the nigga dead."

At trial, F.W. testified her statements to detectives were lies. She denied driving A.K.'s car to the Inn. She said she was under the influence during her interview with detectives and she lied because she wanted to get McRath out of the picture so she could get custody of their children. The People presented evidence of threats against F.W.

The jury found McRath guilty of second degree murder (Pen. Code, § 187, subd. (a) -- count one) and unlawful possession of a firearm (§ 29800, subd. (a)(1) -- count three).[1] It found true an allegation that McRath intentionally and personally discharged a firearm causing Sharma's death. (§ 12022.53, subds. (b), (c), (d).) The trial court sentenced McRath to 15 years to life in prison for the murder, 25 years to life for the firearm-use enhancement, and the upper term of three years for the unlawful possession of a firearm.

---

[1] Undesignated statutory references are to the Penal Code.

The jury found Smith guilty of the robbery of Kevin.  (§ 211 -- count four.) The trial court found true allegations that Smith had two prior strike convictions, but it exercised its discretion under section 1385 to dismiss one of them.  It imposed the upper term of five years for the robbery, doubled to 10 years for the remaining prior strike.

DISCUSSION

I

McGrath contends the evidence is insufficient to support his convictions.

A

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶]  . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." ' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)  " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

B

With regard to McRath's murder conviction, he argues Kevin's testimony and pretrial statements could not reliably be used to support a finding that McRath was the shooter because Kevin gave inconsistent statements and lied to detectives.  Evidence presented at the trial showed Kevin had a prior felony conviction, used drugs on the day of the shooting, lied to detectives, and provided inconsistent statements.  But Kevin's credibility was assessed by the jury. (Evid. Code, § 312; *People v. Gomez* (2018)

5

6 Cal.5th 243, 280; *People v. Maxwell* (1979) 94 Cal.App.3d 562, 576 (*Maxwell*); see *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  In determining sufficiency of the evidence, we do not assess credibility or reweigh the evidence.  (*Gomez*, at p. 280; *People v. Penunuri* (2018) 5 Cal.5th 126, 142; *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Substantial evidence supports the murder conviction.  As McRath acknowledges, there was evidence that F.W. drove McRath, Smith, and Kevin to the Inn, and cell phone data placed the cell phone associated with McRath in the area of the Inn at the time of the shooting.  Surveillance video showed that three individuals approached the Inn room where Sharma's body was found, corroborating Kevin and F.W.'s pretrial statements about who went to the Inn.  One person shown in a surveillance video had long hair and wore a red shirt and black shorts.  The second person wore a dark shirt and light-colored pants.  Smith and Kevin's appearance on the morning after the shooting matched the appearance of the two individuals in the Inn surveillance video.  The third person in the surveillance video wore dark pants and a black, long-sleeve sweatshirt with a white colored box on the back, matching the description Kevin provided of the shooter's attire.  F.W. told detectives McRath wore a black sweatshirt with a white mural on the back.  A.K. testified McRath was in the group that borrowed her SUV on September 2.

Surveillance video showed the person in the black sweatshirt ran with his arm raised just above his waist and an object in his hand.  McRath contends it cannot be determined from the evidence that the object in the person's hand was a gun.  But the surveillance video was played at trial, and it was for the jury to determine what it depicted.  (See *People v. Denard* (2015) 242 Cal.App.4th 1012, 1022.)  Having reviewed the video, we conclude a rational jury could have found that the person in the black sweatshirt held a gun.

Evidence indicated that Smith's friend was the shooter, there was only one gun, and the shooter was called Ru.  McRath's nickname was Ru.

6

We cannot reject the trier of fact's factual findings unless they are physically impossible or inherently improbable.  (*People v. Mayberry* (1975) 15 Cal.3d 143, 150; *Maxwell, supra*, 94 Cal.App.3d at p. 577.)  That there are contradictions and inconsistencies in a witness's testimony does not render it inherently improbable.  (*People v. Fremont* (1941) 47 Cal.App.2d 341, 349.)  " 'To be improbable on its face the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed.' " (*Mayberry*, at p. 150; accord *Fremont*, at p. 349.)  McRath does not identify anything in the testimony or pretrial statements by A.K., F.W., or Kevin that is physically impossible or inherently improbable.  It would not be improper for the jury to credit only part of their testimony or pretrial statements.  (*People v. Robinson* (1964) 61 Cal.2d 373, 389; *People v. Aubrey* (1967) 253 Cal.App.2d 912, 915-916.)

The People also presented evidence of motive.  There was evidence that Smith and A.K. applied for EDD benefits for Michael Hunt, using Kevin's address.  Hunt repeatedly inquired about the status of his EDD card.  And on September 2, Smith kept asking Kevin whether Hunt's EDD card had arrived.  Kevin told detectives the shooting happened because Smith owed Hunt money and Smith and Ru believed Kevin had money at the Inn.  F.W.'s pretrial statement to police similarly indicated the group went to the Inn to pick up a card Smith said Kevin should have given to Smith.

A rational jury could have believed from the evidence that McRath shot Sharma.

C

McRath also challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm.  He contends, based on the same arguments raised with regard to his murder conviction, that there is insufficient evidence he possessed a firearm.  But for the reasons we have explained regarding the murder conviction, there is substantial evidence supporting the finding that McRath knowingly possessed a firearm on the evening of September 2.

7

## D

McRath next contends his stipulation that he was a prohibited person who could not possess a firearm is insufficient to support his conviction for unlawful possession of a firearm because the stipulation did not establish that he is a convicted felon.

Before trial, McRath's trial counsel stipulated that for purposes of the section 29800 charge, McRath had a prior felony conviction. She suggested sanitizing the conviction. Subsequently, in discussing CALCRIM No. 2511 (the jury instruction for the section 29800 charge), McRath's trial counsel complained that the trial court had proposed the standard CALCRIM language as if the parties "had stipulated to the felony." McRath's trial counsel said the People and McRath had simply agreed that McRath would be described as a person prohibited from possessing a firearm. McRath's trial counsel said she intentionally selected the prohibited person language because reference to a felony could lead to jury speculation. Ultimately, the trial court instructed the jury that to find McRath guilty of unlawful possession of a firearm, the People must prove, among other things, that McRath was a prohibited person and could not legally possess a firearm. (CALCRIM No. 2511.) The trial court also instructed that McRath and the People had stipulated that McRath was a prohibited person. (CALCRIM No. 2511.)

McRath's contention lacks merit. He was charged in count three with unlawful possession of a firearm in violation of section 29800, subdivision (a)(1). The elements of that offense are that (1) the defendant possessed a firearm, (2) the defendant knew he possessed the firearm, and (3) the defendant had previously been convicted of a felony. (*People v. Clark* (2021) 62 Cal.App.5th 939, 958.) As we have explained, there is sufficient evidence to establish the first and second elements that McRath knowingly possessed a firearm. As for the third element that he had a prior felony conviction, his counsel asked the trial court to sanitize the conviction and the trial court acquiesced, instructing the jury instead that McRath was prohibited from possessing a firearm as stipulated by the parties. McRath is bound by that stipulation, which was based on his

8

prior felony conviction. (See *In re Francis W.* (1974) 42 Cal.App.3d 892, 903; *People v. Pijal* (1973) 33 Cal.App.3d 682, 697.) Because the stipulation removed the third element from dispute (*People v. Bonin* (1989) 47 Cal.3d 808, 849), McRath cannot successfully argue on appeal that the People failed to prove it. (*Pijal*, at p. 697; *People v. Suggs* (1956) 142 Cal.App.2d 142, 144-145; *People v. Peters* (1950) 96 Cal.App.2d 671, 676; *People v. Hammond* (1938) 26 Cal.App.2d 145, 149-150.)

II

McRath further argues the upper term sentence imposed on his conviction for unlawful possession of a firearm must be vacated because he did not stipulate to the aggravating circumstances upon which the trial court relied, and they were not found true beyond a reasonable doubt. The People agree remand is appropriate.

Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, effective January 1, 2022, to make a middle term sentence the presumptive term and to prohibit imposition of an upper term unless circumstances in aggravation justify the upper term and the facts underlying the aggravating circumstances were stipulated to by the defendant, were found true beyond a reasonable doubt by the trier of fact, or are established by a certified record of conviction. (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731, § 1.3; *People v. Lynch* (2024) 16 Cal.5th 730, 742, 757, 767, 777 (*Lynch*).) Here, the trial court concluded an upper term sentence was justified by McRath's criminal history and the danger he posed to society.

The record on appeal does not establish that the trial court made its criminal history finding based on a certified record of conviction. And the finding that McRath poses a danger to society was not determined by stipulation or beyond a reasonable doubt by the jury. Because the People do not argue, and we cannot say, that those omissions were harmless beyond a reasonable doubt (*Lynch, supra*, 16 Cal.5th at pp. 768, 774-778), we will vacate McRath's sentence and remand for resentencing in accordance with *Lynch*. (*Id.* at pp. 777-778.)

9

In addition, McRath asserts his abstract of judgment must be corrected to reflect that he was not convicted of first degree murder. The People agree McRath's current abstract contains a clerical error, and we agree with the parties. Although updated abstracts of judgment may issue following resentencing, we will direct the trial court to correct McRath's abstract of judgment to the extent necessary.

## IV

Smith contends the trial court erred in imposing an upper term sentence on his robbery conviction.

The trial court imposed an upper term of five years for the robbery, concluding it was warranted based on the aggravating circumstance that Smith had a continuing criminal history that had increased in seriousness. After exercising its discretion under section 1385 to dismiss a prior strike conviction allegation, the trial court doubled the sentence based on a remaining prior strike conviction, resulting in a sentence of 10 years.

The People had presented certified records of conviction for two prior matters: a 1993 juvenile adjudication for assault with a firearm, and a 2008 robbery conviction. Smith contends the finding that his criminal history is of increasing seriousness is not supported because his current conviction for second degree robbery is for the same offense as the 2008 conviction. The People agree that the trial court's finding did not comply with section 1170, subdivision (b) because it was not clearly established by stipulation, by a finding beyond a reasonable doubt, or by a certified record of conviction. Under the circumstances, we will vacate Smith's sentence and remand the matter for resentencing consistent with *Lynch*.

## DISPOSITION

The convictions for McRath and Smith are affirmed. Their sentences are vacated and the matter is remanded to the trial court for resentencing consistent with current law. To the extent necessary following resentencing, the trial court is directed to correct

10

McRath's abstract of judgment to reflect that he was convicted of second degree murder, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

/S/
MAURO, Acting P. J.

We concur:

/S/
RENNER, J.

/S/
BOULWARE EURIE, J.

11