Filed 12/13/24  P. v. Rodriguez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC RODRIGUEZ,<br><br>    Defendant and Appellant. | B331150<br><br>(Los Angeles County<br>Super. Ct. No. PA093062) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed.

Alice Newman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Eric Rodriguez appeals from the judgment after a jury convicted him of attempted murder and found true allegations that he personally used a deadly or dangerous weapon in committing the crime and that he inflicted great bodily injury on his victim. He argues the trial court abused its discretion in denying his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to strike his prior serious or violent felony conviction for purposes of the three strikes law and in imposing the enhancements. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *A Jury Convicts Rodriguez of Attempted Murder*

One evening in June 2019 Alejandro Lugo was hanging out with Pablo Rivas and several other friends in the parking lot of their apartment building drinking beer. Rodriguez came up to the group and asked for beer. Rodriguez also asked Lugo, whose father was the manager of the apartment building, if he could smoke, and Lugo said Rodriguez could smoke, but to be careful because the building had cameras. Rodriguez and a woman Lugo did not recognize went to the other side of the parking lot to smoke.

A little later the group heard a fight break out at the other end of the parking lot. Lugo and the others walked over and saw Rodriguez arguing with another man Lugo had never seen before. Rivas stepped between Rodriguez and the other man and told them both to calm down and said, "It's over." When the fight

2

turned physical, Rivas got in the middle to break it up and put his arms out to separate the two men.

The man who had been fighting Rodriguez turned to leave. Rivas had his back to Rodriguez, who had a knife. Rivas felt "a blow from behind" to the back of his head. Rivas fell to his knees, stood up, felt "a second blow" to his cheek, followed by two more blows, one to his chin and one to his throat. Rivas was bleeding profusely from knife wounds on the left side of his face, his chin, his jaw, his throat, and his chest.

Rivas's friends grabbed Rivas as he stumbled and took him into the apartment building to protect him from Rodriguez. Rivas passed out several times along the way. His friends brought Rivas to his apartment, put him on the floor, and called the 911 emergency operator.

Paramedics came and took Rivas to the hospital, where doctors treated his knife wounds with staples and stitches. Rivas later identified Rodriguez in a six-pack photographic line up and at trial.

The People charged Rodriguez with attempted murder (Pen. Code, §§ 187, subd. (a), 664)[1] and alleged that he used a deadly or dangerous weapon, within the meaning of section 12022, subdivision (b)(1), and that he personally inflicted great bodily injury, within the meaning of section 12022.7, subdivision (a). The People also alleged Rodriguez had been convicted of a prior serious or violent felony, within the meaning of the three strikes law. (See §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The jury found Rodriguez guilty of attempted murder and found true the weapon and great bodily injury

---

[1]     Undesignated statutory references are to the Penal Code.

allegations.  The trial court subsequently found true the prior felony conviction allegation.

B.      *The Trial Court Denies Rodriguez's Motion To Strike His Prior Conviction and Sentences Him as a Second Strike Offender*

Rodriguez filed a motion under section 1385 and *Romero*, *supra*, 13 Cal.4th 497 to strike his prior serious or violent felony conviction, a 2010 adjudication for robbery Rodriguez suffered as a juvenile offender when he was 16 years old.  Rodriguez argued that, because he "was only 16 at the time" and "did not have the full capacity to understand what a 'strike' can do to his life," he did not understand the juvenile court's admonitions about the three strikes law.  Rodriguez also pointed out the adjudication was 11 years old.  At the sentencing hearing counsel for Rodriguez argued "accepting a strike at 16 to go home on probation, which is over 10 years old, is not something the Legislature meant to be in the spirit of the three strikes law."

The prosecutor stated that Rodriguez's argument "would carry more weight if there had not been a series of intervening criminal activity by Mr. Rodriguez."  The prosecutor argued that, since Rodriguez's 2010 adjudication for robbery, he was convicted in 2011 of transporting or selling marijuana, where he received felony probation; in 2013 of leaving the scene of an accident without exchanging information (Veh. Code, § 20002, subd. (a)); in 2013 of grand theft of property taken from the person of another (§ 487), pleaded down from robbery, where he was sentenced to 365 days in jail; in 2015 of domestic violence (§ 273.5, subd. (a)); and in 2017 of soliciting prostitution (§ 647, subd. (b)(2)).

4

The court denied Rodriguez's motion under *Romero*. The court agreed with the prosecutor that Rodriguez had engaged in "a pattern of recidivism since the prior strike was sustained or the conviction occurred." The court also stated Rodriguez's juvenile court history, before the sustained robbery adjudication, included two additional sustained petitions in 2008, one for burglary and one for theft and resisting an officer, which the court found reflected "a flurry of [criminal] activity" and culminated in the robbery adjudication that showed he had not "learned not to reoffend." Observing that robbery involves using force or fear, the court recounted Rodriguez's criminal convictions in 2011, 2013 (two of them), 2014, 2017, and 2019 (this conviction). The court stated Rodriguez's current conviction for attempted murder "resulted in pretty severe injuries to the victim," who had a scar that looked like "open heart surgery, basically." The court stated that it was "disturbed by the pattern of recidivism" and that Rodriguez was not "outside the letter and spirit of the three strikes law."

The trial court sentenced Rodriguez to the middle term of seven years, doubled under the three strikes law, plus three years for inflicting great bodily injury and one year for using a deadly or dangerous weapon. The court found it was not in the interest of justice to strike the weapon enhancement. The court also imposed various fines and fees. Rodriguez timely appealed.

# DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Denying Rodriguez's Motion To Strike*

Rodriguez argues the trial court abused its discretion in denying his motion to strike his prior serious or violent felony adjudication and sentencing him as a second strike offender. In particular, Rodriguez argues he is not within the spirit of the three strikes law because the nature and extent of his criminal history "is hardly comparable" to other career criminals and three strike offenders; the adjudication that brought him within the three strikes law occurred long ago and when he was 16 years old; and his mental illness "is a mitigating factor that supports dismissing [his] strike." The trial court, however, considered and weighed these and other proper factors. The court did not abuse its discretion in denying Rodriguez's motion under *Romero*.

1. *Standard of Review*

The trial court has discretion under section 1385, subdivision (a), to dismiss in furtherance of justice a serious or violent felony conviction (or, here, an adjudication) for purposes of sentencing a defendant under the three strikes law. (*Wheeler v. Appellate Division of Superior Court* (2024) 15 Cal.5th 1193, 1206; *People v. Clancey* (2013) 56 Cal.4th 562, 582; *Romero*, *supra*, 13 Cal.4th at p. 530.) The sentence a trial court imposes under the three strikes law often depends on "the trial court's exercise of discretion in determining whether, in furtherance of justice, to strike any of the serious or violent prior convictions that have been charged by the prosecutor and, if so, how many prior convictions to strike." (*In re Coley* (2012) 55 Cal.4th 524,

559-560; see *Clancey,* at p. 582; *People v. Williams* (1998) 17 Cal.4th 148, 158.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*); see *People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)  In ruling on a motion to strike a serious or violent felony conviction or adjudication for purposes of the three strikes law, "the sentencing court must consider both the defendant's constitutional rights and society's interest in the prosecution of crimes.  Therefore, a court may not dismiss a strike solely for judicial convenience, in exchange for a guilty plea, or based on antipathy to the Three Strikes law.  Instead, in determining whether to strike a prior conviction, the trial court must look to 'factors intrinsic to the [Three Strikes] scheme.' [Citation.]  It 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Johnson* (2015) 61 Cal.4th 674, 688-689; see *Carmony*, at p. 377; *People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

"It is not enough to show that reasonable people might disagree about whether to strike one or more prior conviction allegations.  Where the record is silent, or where the record

7

demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance. Because the circumstances must be extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack, the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378, cleaned up.)

  2.     *The Trial Court Did Not Abuse Its Discretion*

Rodriguez's present felony conviction was for a crime that was violent, unprovoked, and bloody. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 320 ["the nature of the current crime is a proper factor" under *Romero*].) He attacked Rivas with a knife four times, inflicting lasting and disfiguring injuries that nearly killed him and required extensive emergency medical treatment. The trial court commented at the sentencing hearing Rivas's injuries were severe and included significant "slash" wounds to his face, throat, and chest that reminded the court of hospital patients after open heart surgery. And Rivas was unarmed, unprepared, and only trying to break up a fight. The trial court did not abuse its discretion in finding the "nature and circumstances" of Rodriguez's attempted murder of Rivas weighed strongly against striking the prior adjudication. (See *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124-1125 [trial court did not abuse its discretion in denying the defendant's

8

motion under *Romero* where the defendant "personally used a deadly and dangerous weapon" and "inflicted great bodily injury" in a "violent attack with a screwdriver"]; *People v. Finney* (2012) 204 Cal.App.4th 1034, 1039 [trial court did not abuse its discretion in denying the defendant's motion under *Romero* where the "'crime involved great violence, great bodily harm, threat of great bodily harm, acts dis[cl]osing a high degree of cruelty, viciousness or callousness'"].)

The nature, number, and circumstances of Rodriguez's prior adjudications and convictions showed an extensive, consistent, and sometimes (but admittedly not always) violent history of committing crimes. In addition to the 2010 adjudication for robbery, Rodriguez had adjudications for burglary (a felony that is serious if it is a residential burglary and violent if a non-accomplice is present (see §§ 667.5, subd. (c)(21); 1192.7, subd. (c)(18); *People v. Denard* (2015) 242 Cal.App.4th 1012, 1025), theft, and resisting an officer in the performance of the officer's duty. After 2010 Rodriguez committed a steady stream of crimes every year or two: transporting or selling marijuana (2011), hit-and-run (2013), grand theft (2013), domestic violence (2015), and soliciting prostitution (2017), culminating in his current crime of attempted murder (2019). Not the kind of crime-free life that would take a defendant outside the spirit of the three strikes law. (See *People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1108 [trial court abused its discretion in striking the defendant's prior serious or violent felony conviction where the defendant "failed to reform his behavior during the decade plus that elapsed between his first strike conviction and his third strike conviction"]; *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1113 [defendant's "'lengthy'

and 'fairly consistent' criminal history" meant "he fell squarely within the three strikes law"]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 ["trial court acted within the applicable standards when it declined, based on defendant's 'unrelenting' criminal behavior, to find that he falls outside the spirit of the three strikes law"].)

Rodriguez argues he is not within the spirit of the three strikes law because the nature and extent of his criminal history "is hardly comparable" to other career criminal, three strike offenders. True, Rodriguez's many convictions from 2010 to 2019 were misdemeanors, but misdemeanors are still crimes (see § 16, subd. 2); *People v. Liu* (2019) 8 Cal.5th 253, 257), and they count in the analysis under *Romero* (see, e.g., *People v. Williams*, *supra*, 17 Cal.4th at p. 154; *People v. Anderson* (2019) 42 Cal.App.5th 780, 786). When considering whether the defendant has lived a crime-free life since suffering a serious or violent felony conviction under the three strikes law, courts consider whether the defendant has committed misdemeanors as well as felonies. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 331 [a defendant does not take himself outside the spirit of the three strikes law "by the additional commission of a virtually uninterrupted series of nonviolent felonies and misdemeanors over a lengthy period"].) And Rodriguez's misdemeanor convictions were not all non-violent: Domestic violence is, among other things, a crime of violence. (See *People v. Laino* (2004) 32 Cal.4th 878, 897.)

Rodriguez argues that the 2010 adjudication occurred too long ago and when he was young and that the "ten-year gap between the juvenile robbery and the current offense weakens the connection to potential recidivism." True, Rodriguez

10

committed the robbery 10 years before he attempted to kill Rivas. But Rodriguez did not spend those 10 years as a law-abiding citizen. As discussed, Rodriguez committed numerous and varied crimes during those years. "In determining whether a prior conviction is remote, the trial court must evaluate whether the defendant has had a 'crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways.' [Citation.] If the 'defendant has led a continuous life of crime after the prior, there has been no "washing out" and there is simply nothing mitigating about a [decades]-old prior.'" (*People v. Nunez* (2023) 97 Cal.App.5th 362, 372; see *People v. Vasquez* (2021) 72 Cal.App.5th 374, 390 ["A prior strike conviction is not considered 'remote' for the purposes of mitigation where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim."]; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749 [remoteness has little mitigating force "'where, as here, the defendant has led a continuous life of crime'"]; see also *People v. Dain* (2024) 99 Cal.App.5th 399, 415-416 ["remoteness, by itself, cannot be the basis for dismissing a prior strike conviction," although "a remote conviction may be dismissed if it is followed by a long crime-free period evidencing rehabilitation"], review granted May 29, 2024, S283924.)[2] "[O]lder strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways."

---

[2]      The Supreme Court granted review in *People v. Dain, supra*, 99 Cal.App.5th 399 to decide whether the Court of Appeal erred in remanding the case with directions to reinstate the strike finding and to resentence the defendant as a person who has suffered a prior strike conviction under the three strikes law.

11

(*People v. Mayfield*, *supra*, 50 Cal.App.5th at p. 1107.)  Rodriguez never pivoted.

Rodriguez also argues that his "age at the time of the prior strike is not just relevant to his culpability for the strike offense but also to his decision to accept a strike in a plea agreement" and that, because he was 16 years old at the time, he did not have the capacity to understand all the ramifications of an adjudication under the three strikes law.  But juvenile adjudications for certain crimes, including robbery, constitute prior serious or violent felony convictions under the three strikes law where the minor was 16 years old (or older).  (§ 667, subd. (d)(3); Welf. & Inst. Code, § 707, subd. (b)(3); *People v. Pacheco* (2011) 194 Cal.App.4th 343, 346.)  In addition, as the trial court stated, the juvenile court in Rodriguez's robbery case advised him that his robbery adjudication constituted a serious or violent felony conviction under the three strikes law and that the adjudication could double the time he might spend in custody for future convictions.  Quoting from the transcript of the hearing in the juvenile court, the trial court observed that "Rodriguez was advised, 'You also need to be aware, this felony, a robbery, that's what is called a serious or violent felony.  California has something called the three strikes law.' . . . 'This conviction can cause the time you spend in custody to be longer.  It can be doubled.'"  And, though he may have been 16 years old at the time, Rodriguez gained significant experience with the criminal justice system over the next 10 years to understand the consequences of committing another felony.  (Cf. *People v. Farwell* (2018) 5 Cal.5th 295, 302 ["previous experience in the criminal justice system is relevant to a recidivist's knowledge and

12

sophistication regarding his [legal] rights" (internal quotation marks omitted)].)

Finally, Rodriguez argues the trial court did not give enough weight to his mental health issues. Rodriguez admits that the trial court "was evidently aware of appellant's mental health problems," but argues that the court did not give "this issue appropriate weight in balancing the relevant factors and deciding whether to dismiss the strike prior."

"'The trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.'" (*People v. Brugman, supra*, 62 Cal.App.5th at p. 637; see *Carmony, supra*, 33 Cal.4th at p. 378.) Although there was no evidence Rodriguez had been diagnosed with any mental health illnesses or conditions, the trial court was aware Rodriguez had some struggles with his mental health. Counsel for Rodriguez raised it in his *Romero* motion, stating Rodriguez had been "in the mental health court for a mentionable period which was due to his mental incompetency at the time he was arrested." Counsel for Rodriguez also raised the issue several times at the sentencing hearing. And when sentencing Rodriguez after denying his motion under *Romero*, the trial court acknowledged that the factor under California Rules of Court, rule 4.423(b), which directs the court to consider as a mitigating factor whether the defendant "was suffering from a mental or physical condition that significantly reduced culpability for the crime," might apply to Rodriguez. But the trial court did not abuse its discretion in concluding other factors outweighed this one. (See *People v. Mendoza* (2022) 74 Cal.App.5th 843, 861 [the Supreme Court's

13

decision in *People v. Williams*, *supra*, 17 Cal.4th 148 gives a trial court ruling on a *Romero* motion "substantial leeway in determining the most significant facts in each case"].)

B.     *The Trial Court Did Not Abuse Its Discretion in Imposing the Two Enhancements*

As stated, the trial court imposed a three-year enhancement under section 12022.7, subdivision (a), for inflicting great bodily injury and a one-year enhancement under section 12022, subdivision (b)(1), for using a deadly or dangerous weapon.  Rodriguez argues the court abused its discretion in imposing these enhancements by "failing to afford great weight" to his mental illness and by imposing both enhancements. Rodriguez cites section 1385, subdivision (c), which states that, in exercising discretion whether to strike an enhancement, the court "shall consider and afford great weight to," among other things, whether the "current offense is connected to mental illness" and whether "[m]ultiple enhancements are alleged in a single case." (§ 1385, subd. (c)(2)(A), (D) & (B).)

Rodriguez, however, forfeited this argument by not raising it in the trial court.  (See *People v. Coleman* (2024) 98 Cal.App.5th 709, 724 [defendant forfeited his argument the trial court should have stricken an enhancement under section 1385, subdivision (c), by failing to make that request at sentencing]; see also *People v. Scott* (2015) 61 Cal.4th 363, 406 ["'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial.'"]; *Carmony*, *supra*, 33 Cal.4th at pp. 375-376 ["any failure on the part of a defendant to invite the court to

14

dismiss under section 1385 . . . waives or forfeits his or her right to raise the issue on appeal"].)

Rodriguez argues that, if he forfeited the issue, his trial counsel was ineffective for not asking the trial court to dismiss one or both of the enhancements.  We cannot resolve this issue, however, on direct appeal.

"An ineffective assistance of counsel claim has two elements: a defendant must show that their counsel's performance was deficient, *and* that this deficient performance prejudiced the defense."  (*In re Tellez* (2024) 17 Cal.5th 77, 88; see *People v. Cudjo* (1993) 6 Cal.4th 585, 615; *People v. Price* (1991) 1 Cal.4th 324, 386.)  When considering whether trial counsel failed to act as a reasonably competent attorney, "a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see *People v. Lucas* (1995) 12 Cal.4th 415, 443 ["we presume counsel's decision not to raise [a] claim was a reasonable, tactical one unless the record affirmatively demonstrates otherwise"].)

Thus, "[i]t is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction [or, here, an enhancement] will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*People v. Mai, supra,* 57 Cal.4th at p. 1009; accord, *People v. Arredondo* (2019) 8 Cal.5th 694, 711;

see *People v. Lopez* (2008) 42 Cal.4th 960, 972 ["claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal," because "'the failure to object will rarely establish ineffective assistance'"].)

Rodriguez's ineffective assistance claim is more appropriately resolved on habeas. Trial counsel for Rodriguez may have decided the best strategy was to emphasize Rodriguez's motion to strike his prior serious or violent felony adjudication, which doubled the length of Rodriguez's sentence for attempted murder from seven to 14 years, rather than the enhancements, which together added four years to Rodriguez's sentence. In addition, "[c]ounsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price*, *supra*, 1 Cal.4th at p. 387; see *People v. Diaz* (1992) 3 Cal.4th 495, 562.) Given the trial court's emphasis on Rodriguez's repeated use of a knife and the gruesome injuries he inflicted, trial counsel for Rodriguez could reasonably have concluded that asking the court to strike the enhancements based on those circumstances was futile. It would be better to decide Rodriguez's ineffective assistance claim on habeas, where the court can consider extra-record evidence submitted with the petition. (See *People v. Woodruff* (2018) 5 Cal.5th 697, 736 ["Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction."]; *People v. Mickel* (2016) 2 Cal.5th 181, 198 ["certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding," including that the "record on appeal may not explain why counsel chose to act as he or she did," so that "a reviewing court has no

16

basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable"].)

## DISPOSITION

The judgment is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

17