Filed 5/18/26  P. v. Samaniego CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL SAMANIEGO,<br><br>Defendant and Appellant. | B341640<br><br>Los Angeles County<br>Super. Ct. No. BA511590 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Serena R. Murillo, Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Miguel Angel Samaniego chased a rival gang member, Gabriel Hernandez, into a barbershop that was a stronghold of Hernandez's gang.  Then, while standing at the entrance of the barbershop, Samaniego said the name of his gang into the shop.  In response, a different rival gang member, Jack Urzua, exited the barbershop and confronted Samaniego in the parking lot.  The two men engaged in an altercation, which escalated into them exchanging gunfire, and ended with Samaniego shooting and killing Urzua.  Video footage captured these events, including the shooting, and that footage was played for the jury.

The jury convicted Samaniego of first degree murder (Pen. Code,[1] § 187, subd. (a)) of Urzua, found true the allegation that Samaniego personally used a firearm in the commission of murder (§ 12022.5, subd. (a)), and convicted him of unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1)).  The trial court sentenced him to 25 years to life in state prison for the murder, and stayed sentencing on the firearm use allegation and firearm possession count.

On appeal, Samaniego argues reversal is required based on erroneous evidentiary rulings, instructional errors, ineffective assistance of counsel, prosecutorial errors, lack of substantial evidence supporting jury findings, and cumulative error.  We affirm.

---

[1]     Subsequent unspecified references to statutes are to the Penal Code.

# BACKGROUND

The Opal Street and Varrio Nuevo Estrada (VNE) gangs were rival gangs in Boyle Heights. Samaniego was a member of the Opal Street gang. The victim, Jack Urzua (aka "Scooby"), was a member of VNE, as was Gabriel Hernandez. The shooting that gave rise to Samaniego's murder conviction occurred on the evening of November 2, 2022, in a strip mall parking lot outside a barbershop that was a VNE stronghold.

The government presented to the jury two recordings as evidence of the shooting and the events leading up to it. The first recording is video surveillance footage of the parking lot where the shooting occurred. The second recording is audio of a police interview of Hernandez after Urzua's homicide. We describe the facts below primarily from these sources.

The events leading to Urzua's death started when Opal Street gang members approached Hernandez in their car while he was riding his bicycle. Someone in the car said to Hernandez, "fuck VNE." Hernandez responded by saying "fuck you" and saying the name of his own gang. The Opal Street gang members then sped away.

Hernandez later rode his bicycle near the barbershop and walked into the establishment. Meanwhile, the Opal Street gang members pulled into the parking lot. Samaniego exited the car, followed Hernandez, and went to the front door of the barbershop but did not enter. While standing in front of the open door, Samaniego called out into the barbershop, "Opal Street." In response, Urzua went outside and confronted Samaniego.

When Urzua exited the barbershop, Samaniego pulled out a gun, pointed it at Urzua, and pushed Urzua up against a pillar. Urzua tried to back Samaniego off of him, then began to walk

3

away. Samaniego followed Urzua and hit him in the head with his gun. At that point, Urzua tried to run away, pulled out his gun, and the men shot at each other. Urzua collapsed and Samaniego drove away. Urzua died from multiple gunshot wounds.

The parties stipulated that Samaniego was prohibited by law from possessing a firearm on November 2, 2022, the evening of the shooting.

Samaniego did not testify or present witnesses in his defense.

## DISCUSSION

I. **The trial court did not abuse its discretion by limiting the defense's impeachment of Hernandez, and in any event, the purported errors were harmless**

Samaniego contends the trial court erred and violated his constitutional rights by precluding impeachment of Hernandez with (1) Hernandez's pending charges for robbery, which involved possession of a firearm and fleeing from the police; and (2) the facts underlying his two prior felony convictions. We conclude the trial court did not err and that the purported errors were harmless.

### A. Additional background

Defense counsel sought to impeach Hernandez with the conduct underlying his pending charges for which he was in custody. The prosecutor objected, stating, "even though the use immunity does cover anything he says while on the stand, I don't

4

believe that there is an evidentiary vehicle for the defense to ask about felonious conduct that has not resulted in a conviction."

Defense counsel responded, "I believe I can inquire as to the underlying conduct.  He did have a gun in that case.  He was fleeing from the police.  It's two counts of robbery.  I think it's relevant to his veracity[.]"  Defense counsel further argued, "[h]e was with two other individuals, . . . demonstrating that he does act in concert with others in his gang.  In those cases a gun was held to the clerk's back, there was a threat that if anybody moved they would be shot."  The court asked, "[a]nd if he denies that?"  Defense counsel responded, "[i]f he denies that I would have the [investigating] officers under subpoena . . . . I would ask that I be given the opportunity to obtain the witnesses."

The prosecutor then argued the court should exclude evidence of the pending charges against Hernandez pursuant to Evidence Code section 352, though the government had no objection to asking Hernandez "about his prior convictions" and his "gang-related activity."

Defense counsel noted regarding Hernandez's vandalism conviction: "[I]t was VNE tagging.  He does note his moniker as Demon and that's why the officers speak with him.  And he has a bag with a gun in it."  The court asked defense counsel, "[s]o you want, in addition to the crime, to ask him about Demon, the fact that he's an active gang member and he had a gun on him at the time?" Defense counsel responded, "[y]es."  The court asked the prosecutor, "Are you opposed to those things?" The prosecutor responded, "No."

The court ruled that defense counsel could not ask Hernandez about his pending charges.  The court stated:

5

I think the current charge of the two [robberies] is going down a little bit of a side path that is not entirely pro[ba]tive of [Samaniego's] credibility and under 352[.] I think it's an ancillary issue that is covered by the two prior convictions that he does have involving prior use of a gun and the graffiti charge.  Especially in light of the fact that [the prosecutor] is not objecting to [defense counsel] asking with regard to the vandalism, his gang membership, his moniker and the fact that he had a gun at the time . . . .

So I'm going to rule that [defense counsel] . . . can't ask . . . about any of the pending charges.  I will also mention what he's in for.  But you *can't* ask him about the two priors.[2]  (Italics added.)

On direct examination, the prosecution asked Hernandez if he sustained prior convictions for possessing a firearm and graffiti/gang tagging, and he admitted that he did.  Defense counsel did not ask Hernandez about his pending charges or their underlying facts.

---

[2]  The government contends that the trial court judge meant to say, "you *can* ask him about the two priors," and that the judge misspoke here.  Samaniego contends the judge was ruling that defense counsel could ask Hernandez whether he sustained the two prior convictions, but could not ask follow-up questions about the specific facts underlying those two convictions.  We need not resolve this dispute because it has no impact on our analysis.  As discussed below, regardless of which scenario is accurate, either way we conclude the trial court did not abuse its discretion.

Using CALCRIM No. 316, the trial court instructed the jury that it could use a finding that "a witness has committed a crime or other misconduct" to evaluate that witness's credibility.

### B. Relevant law

A witness may be impeached with any prior conduct involving moral turpitude "whether or not it resulted in a felony conviction." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) "Evidence of circumstances underlying a conviction is admissible to impeach credibility if the proponent demonstrates that the evidence has 'any tendency in reason' to disprove credibility." (*People v. Dalton* (2019) 7 Cal.5th 166, 214 (*Dalton*).)

The court, however, may exclude impeachment evidence pursuant to Evidence Code section 352. (*Clark*, *supra*, 52 Cal.4th at p. 931; *Dalton*, s*upra*, 7 Cal.5th at p. 214.) This statute provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

The trial court has broad discretion under Evidence Code section 352 to admit or exclude impeachment evidence, and a reviewing court will uphold the trial court's ruling unless it abused its discretion. (*Clark*, *supra*, 52 Cal.4th at pp. 931–932.) The trial court abuses its discretion when it acts in an arbitrary, capricious or patently absurd manner, outside the bounds of reason. (*People v. Johnson* (2022) 12 Cal.5th 544, 605-606 (*Johnson*).)

## C. Analysis

### 1. The trial court did not abuse its discretion in excluding Hernandez's pending criminal charges under Evidence Code section 352

The trial court concluded that impeaching Hernandez using his pending robbery charges "is not entirely probative" of his credibility and was "an ancillary issue that is covered by the two prior convictions." By "covered" the trial court meant Hernandez's credibility was already being impeached by evidence that he was a gang member and criminal. The court further found that allowing additional impeachment based on Hernandez's pending robbery charges would lead to a "trial within a trial." Weighing the factors of Evidence Code section 352, the court excluded evidence of the pending charges.

This was not an arbitrary or patently absurd ruling. Indeed, the court's ruling was fair to both parties. It allowed the defense adequate opportunity to impeach Hernandez based on his prior criminality while mitigating the danger that introducing the pending robbery charges could be distracting, inefficient, cumulative, and/or prejudicial. We therefore conclude the trial court did not abuse its discretion under Evidence Code section 352 in excluding Hernandez's pending criminal charges.

Quoting *People v. Martinez* (2002) 103 Cal.App.4th 1071, 1080 (*Martinez*), Samaniego argues the trial court erred because "[i]t is longstanding law that a prosecution witness can be impeached by the mere fact of pending charges." But in the next sentence, *Martinez* clarifies this principle applies where evidence of pending charges supports the assertion the witness is testifying in order to seek favor or leniency from the government.

8

(*Ibid.*)  Nothing in the record in this case, however, indicates that Hernandez testified in order to seek favor or leniency.

Hernandez initially invoked his Fifth Amendment right against self-incrimination.  Only after he was granted use immunity did he agree to testify.  When Hernandez did testify, he was evasive.  At one point, he claimed that he was drunk on the day of the incident and did not remember that day.  At another point, he testified he entered the barbershop merely because he had to use the restroom.  He also claimed that he did not remember his statements to the police, and he declined to look at a transcript to try to refresh his memory.  Hernandez's performance on the stand indicates he was not currying favor with the prosecution.  Accordingly, evidence of the pending charges against him would have had limited impeachment value.

Although Samaniego is correct that a prosecution witness *can* be impeached by pending charges, the trial court nonetheless has discretion to exclude such evidence under Evidence Code section 352.  The trial court did so here and as discussed above, its ruling was not an abuse of discretion.[3]

---

[3]     Having rejected Samaniego's argument on the merits, we need not address whether Samaniego forfeited it by not raising it in the trial court.  We likewise need not address whether trial counsel's lack of objection constituted prejudicial ineffective assistance of counsel.

## 2. Assuming the trial court excluded the facts underlying Hernandez's prior convictions under Evidence Code section 352, this ruling was not an abuse of discretion

Samaniego next argues the trial court erred by prohibiting him from impeaching Hernandez using the facts underlying Hernandez's prior convictions.  Assuming the trial court prohibited such evidence (see footnote 2, *ante*), we reject Samaniego's argument.

The trial court did not abuse its discretion by precluding impeachment based on the facts underlying Hernandez's prior convictions.  Given the trial court allowed Hernandez to testify about the fact of his convictions, the underlying circumstances had relatively limited probative value.  It was not arbitrary or irrational for the trial court to find that this probative value was substantially outweighed by other factors.  The trial court reasonably concluded that allowing further questioning regarding the facts underlying Hernandez's prior convictions could create a substantial danger of undue prejudice, confuse the issues, mislead the jury, or necessitate undue consumption of time.  We discern no abuse of discretion by the trial court.

## 3. The trial court's exercise of its discretion under Evidence Code section 352 did not violate Samaniego's constitutional rights

Because the trial court's rulings concerning the scope of admissible evidence that could be used to impeach Hernandez did not violate state evidentiary law, it follows logically that the court's rulings did not violate Samaniego's constitutional rights to due process or to present a defense.  (See, e.g., *People v. Abilez*

10

(2007) 41 Cal.4th 472, 503 ["Having found no state law [evidentiary] error, we also reject defendant's federal constitutional claim"]; *ibid.* [garden-variety evidentiary issues under state law do not implicate a defendant's federal constitutional right to present a defense].) Nor did the trial court violate Samaniego's right to confront and cross-examine witnesses. "Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." (*Dalton*, *supra*, 7 Cal.5th at p. 217.) As explained above, the trial court's exercise of its discretion in this regard was proper—the court reasonably limited impeachment of Hernandez to avoid duplicative, prejudicial, confusing evidence of marginal relevance.

### 4. Prejudice

Because we conclude the trial court did not err by narrowing the scope of admissible impeachment evidence, we need not address whether the purported errors were harmless. We nonetheless exercise our discretion to do so.

As explained, evidence of the underlying facts of Hernandez's convictions is of limited probative value because Hernandez admitted to those convictions at trial. Moreover, apart from Hernandez's testimony, the evidence of Samaniego's guilt was overwhelming. The prosecution presented a video showing Samaniego's murder of Urzua.

In light of Hernandez's testimony and the overwhelming evidence of Samaniego's guilt, it is difficult to envision how the trial court's evidentiary rulings could have led to a less favorable result for defendant. We therefore conclude that, even assuming

11

(without deciding) the trial court's evidentiary rulings concerning the scope of admissible impeachment evidence violated state law and federal constitutional law, any purported error was harmless under the state and federal harmless error standards. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [error under state law requires reversal if the defendant can demonstrate it is reasonably probable he would have obtained a more favorable outcome absent the error]; *Chapman v. California* (1967) 386 U.S. 18, 24 [error under federal constitutional law requires reversal unless the error was harmless beyond a reasonable doubt].)

## II.    The trial court properly omitted CALCRIM No. 570 from the jury instructions, and trial counsel was not ineffective in declining to request it

Samaniego contends the trial court prejudicially erred by not instructing the jury with CALCRIM No. 570 on voluntary manslaughter based on sudden quarrel/heat of passion, and that his counsel was prejudicially ineffective in asserting there was no evidence to support such an instruction. We are unpersuaded. Because substantial evidence did not support the instruction, the trial court did not err by omitting it, and counsel was not ineffective in declining to ask for it.

### A. Additional background

The jury was instructed on perfect self-defense (CALCRIM No. 505) and voluntary manslaughter based on imperfect self-defense (CALCRIM No. 571).

During the hearing on jury instructions, the trial court stated it did not believe CALCRIM No. 570 regarding heat of

12

passion "necessarily applies."[4]  Both defense counsel and the prosecutor asked that CALCRIM No. 570 not be given, and the court agreed.

**B. Relevant law**

Voluntary manslaughter is a lesser included offense of murder.  (*People v. Booker* (2011) 51 Cal.4th 141, 181.)  "An unlawful killing with malice is murder[,]" but "an intentional killing is reduced to voluntarily manslaughter if other evidence negates malice."  (*People v. Manriquez* (2005) 37 Cal.4th 547, 583 (*Manriquez*).)  "Malice is presumptively absent when the defendant acts upon a sudden quarrel or heat of passion on sufficient provocation . . . ."  (*Ibid.*, citing § 192, subd. (a).)  "The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection."  (*Id.* at pp. 583–584.)  " 'Heat of

---

[4]      CALCRIM No. 570 provides: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.  [¶]  The defendant killed someone because of a sudden quarrel or in the heat of passion if:
1. The defendant was provoked;
2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured (his/her) reasoning or judgment;
AND
3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment."

passion arises when "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." ' " (*Id.* at p. 584.)

" '[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . .' [Citation.] Such instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense." (*People v. Whalen* (2013) 56 Cal.4th 1, 68, italics in original.) "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

### C. Analysis
#### 1. Substantial evidence did not support including CALCRIM No. 570

The elements of sudden quarrel/heat of passion listed in CALCRIM No. 570 are: (1) the defendant was provoked; (2) as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and (3) the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.

With respect to the first element (i.e., whether the defendant was provoked), the record indicates that Samaniego announced the name of his gang into the barbershop but did not

14

enter the barbershop, then Urzua exited the barbershop armed with a gun and confronted Samaniego. The jury could have reasonably interpreted Urzua exiting the barbershop and confronting Samaniego as the victim provoking the killer. Accordingly, there is substantial evidence supporting a reasonable factual inference that the first element of CALCRIM No. 570 was present.

Substantial evidence does not, however, support an inference that the second element of the instruction was present (i.e., as a result of the provocation, the defendant acted rashly and under the influence of intense emotion). Indeed, the record contains no evidence that Samaniego acted rashly under the influence of intense emotion. Rather, it shows that he entered rival gang territory, initiated contact with rival gang members at their stronghold knowing this could lead to an escalation of violence, then personally escalated the violence, which culminated with him killing Urzua.[5] Nothing in the record suggests that Samaniego did so rashly and under the influence of intense emotions. Rather, the record supports the inference that Samaniego's conduct in escalating the violence was calculated. He knew that his conduct could lead to a gang shooting, and he welcomed and initiated the escalation of violence as the confrontation with Urzua unfolded.

Because no evidence supports the inference that Samaniego acted from passion rather than judgment (element two), we need

---

[5]     The facts of this case are thus very different from the classic heat of passion scenario, which would involve something like a spouse unexpectedly discovering their partner in the act of adultery, leading to an immediate, violent, and fatal reaction out of sudden rage.

not address whether the provocation would have caused a person of average disposition to act from passion rather than judgment (element three).  Given that substantial evidence did not reasonably support a jury finding on the second element listed in CALCRIM No. 570, the trial court had no sua sponte duty to give that instruction, and we discern no error in the trial court's omission of it.[6]  Nor was trial counsel ineffective in not requesting the instruction.  (*People v. Thompson* (2010) 49 Cal.4th 79, 122 (*Thompson*) ["Counsel is not ineffective for failing to make frivolous or futile motions"].)

Samaniego's reliance on *People v. Dominguez* (2021) 66 Cal.App.5th 163 (*Dominguez*) is misplaced.  In *Dominguez*, "[e]ach [defendant] testified he fired in a panic and fear when, while about eight feet away from them, [a rival gang member] said, 'Where the fuck you from? . . . This is Eastside,' and lunged at them while reaching for an apparent weapon in his waistband." (*Id.* at p. 168.)  Based on this testimony and expert testimony regarding the nature of gang confrontations, the court concluded that substantial evidence supported instructing the jury on voluntary manslaughter based on heat of passion.  (*Id.* at pp. 169, 178.)

Here, by contrast, the record contains no evidence that Samaniego shot abruptly in response to an unexpected challenge by a gang member reaching for what appeared to be a gun.  Rather, Samaniego chose to enter rival gang territory, initiated contact with a rival gang stronghold, then escalated the conflict

---

[6]  Because we conclude that the trial court did not err in omitting CALCRIM No. 570, we need not address whether Samaniego was prejudiced by its omission.

16

in a manner that directly led to him killing a rival gang member. This case is factually distinguishable from *Dominguez*.

### 2. A note regarding the trial court's inclusion of CALCRIM No. 522

To the extent Samaniego suggests the trial court erred by omitting CALCRIM No. 570 because that omission contradicted the court's inclusion of CALCRIM No. 522, we are unpersuaded. Generally speaking, CALCRIM No. 522 allows the jury to weigh whether the presence of provocation should reduce a murder from first degree to second degree murder. It also contains bracketed language that, when included in the instruction, allows the jury to use provocation to reduce a murder to manslaughter. (See *People v. Thomas* (1945) 25 Cal.2d 880, 903–904 ["The existence of provocation and its extent and effect, if any, upon the mind of defendant in relation to premeditation and deliberation in forming the specific intent to kill, as well as in regard to the existence of malice (Pen. Code, § 188), constitute questions of fact for the jury . . . ."].)

The trial court included the bracketed CALCRIM No. 522 language regarding manslaughter.[7] The court explained: "I think provocation can be heat of passion but it can also be self-defense."

---

[7]     The court instructed the jury with CALCRIM No. 522 as follows: "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. If you conclude that the defendant was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter."

Thus, in the trial court's view, the proper course was to include the bracketed manslaughter language in CALCRIM No. 522 in order to reinforce the idea to the jury, which was fleshed out in greater detail in CALCRIM No. 571, that the jury could convict Samaniego of voluntary manslaughter if it concluded that he killed Urzua after being provoked into acting in imperfect self-defense. Nothing about this conclusion was inconsistent with the court's decision to omit CALCRIM No. 570, which as discussed above, was unsupported by substantial evidence that Samaniego acted rashly under the influence of intense emotions.

### III. We reject Samaniego's assertion that the trial court erred by not further instructing the jury on the relationship between provocation and imperfect self-defense

Samaniego next contends the trial court erred by "not including provocation and its relationship to imperfect self-defense in CALCRIM No. 571, thus failing to instruct the jury on the prosecutor's burden of proving beyond a reasonable doubt appellant did not act in imperfect self-defense, and thus, that he acted with malice."[8] We reject this contention.

---

[8] The trial court instructed the jury, in pertinent part, as follows using CALCRIM No. 571:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense.
> [¶]
> The defendant acted in imperfect self-defense if:
> 1. The defendant actually believed that he was in imminent danger of being killed or suffering great bodily injury;

18

"Jurors are presumed able to understand and correlate instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) CALCRIM No. 571 correctly explained to the jury the relevant principles surrounding imperfect self-defense voluntary manslaughter. The trial court explained it was including the manslaughter language in CALCRIM No. 522 to reinforce to the jury that it could convict Samaniego of voluntary manslaughter if it concluded that he killed Urzua after being provoked into acting in imperfect self-defense. Samaniego cites no case law suggesting that the trial court was required to modify CALCRIM No. 571 to further correlate it with CALCRIM No. 522, nor has he persuaded this court that any such modification was necessary. The instructions given articulated the relevant legal standard to the jury concerning imperfect self-defense. Samaniego was thus given a fair opportunity to have the jury decide that he acted in imperfect self-defense, and the jury rejected that conclusion. We discern no error by the trial court. Nor was trial counsel ineffective in not requesting a modification correlating CALCRIM Nos. 571 and 522. (*Thompson, supra*, 49 Cal.4th at p. 122

---

AND
2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger;
BUT
3. At least one of those beliefs was unreasonable.
[¶]. . . .[¶]The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense. If the People have not met this burden, you must find the defendant not guilty of murder.

["Counsel is not ineffective for failing to make frivolous or futile motions"].)[9]

## IV. The trial court did not err by instructing the jury using CALCRIM Nos. 3471 and 3472

Samaniego next argues the trial court erred by instructing the jury with CALCRIM No. 3471 (Right to Self-Defense: Mutual Combat or Initial Aggressor) and CALCRIM No. 3472 (Right to Self-Defense: May Not Be Contrived). We disagree.

### A. Additional background

The parties agreed that CALCRIM No. 3471 should be given.

Defense counsel objected to the inclusion of CALCRIM No. 3472, stating, "I don't think there was any provocation or quarrel in evidence." The prosecution argued that Samaniego provoked the initial interaction with Hernandez, and the "violent interaction just happened to take place with another individual who was at the barbershop." The court asked, "[i]f Mr. Hernandez wasn't part of the equation, would the People still believe their theory supports this instruction?" The prosecutor responded, "[y]es. I have Mr. Samaniego going armed into a rival gang territory and yelling his gang name into a rival gang strong hold . . . . [¶] . . . [¶] I think that's a pretty provocative act." The court agreed with the prosecutor, finding there was substantial

---

[9]     Because we reject Samaniego's argument on the merits and conclude the trial court did not err, we need not address whether the purported error was harmless.

evidence Samaniego provoked a fight by yelling into the barbershop, supporting the inclusion of CALCRIM No. 3472.

**B. Relevant law**

A trial court must give a requested instruction if it is supported by substantial evidence. (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) In order for this standard to be met, " 'there need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference.' " (*People v. Alexander* (2010) 49 Cal.4th 846, 921.) We do not consider witness credibility in determining whether the record contains substantial evidence supporting a particular jury instruction. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1419.)

**C. Analysis**
    **1. Substantial evidence supported giving CALCRIM No. 3471**

We reject Samaniego's assertion that the trial court erred by giving CALCRIM No. 3471 because there was insufficient evidence of mutual combat or that he started a fight.[10]

---

[10] Using CALCRIM No. 3471, the court instructed the jury as follows: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶ 1. He actually and in good faith tried to stop fighting; [¶] 2. He indicated, by word or by conduct, to his opponent . . . that he wanted to stop fighting and that he had stopped fighting; [¶] AND 3. He gave his opponent a chance to stop fighting. [¶ . . . ¶] A fight is *mutual combat* when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self defense arose." (Italics in original.)

21

Hernandez's pretrial statement to the police that Samaniego said "Opal Street" into a VNE barbershop constituted substantial evidence that Samaniego wanted to start a fight with someone there.  And Urzua exiting the shop and walking up to Samaniego, in response to Samaniego calling out his gang name, constituted substantial evidence of an implied agreement to fight.  (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1036 [mutual combat applies to "a violent confrontation conducted pursuant to prearrangement, mutual consent, or an express or implied agreement to fight"].)

### 2. Substantial evidence supported giving CALCRIM No. 3472

CALCRIM No. 3472, the instruction on contrived self-defense, instructed the jury in pertinent part that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." Samaniego saying "Opal Street" into the barbershop constituted substantial evidence that supported giving CALCRIM No. 3472 on contrived self-defense.  The court's decision to give the instruction was further supported by the video evidence showing that Samaniego provoked the gunfight by following Urzua with his gun drawn as Urzua walked away.

### V.   Samaniego's claim of prosecutorial error during closing argument is belied by the record

Samaniego next contends the prosecutor committed prejudicial error during closing argument by misstating the law on mutual combat.  We are unpersuaded.

### A. Additional background

In his rebuttal argument, the prosecutor stated the following regarding the mutual combat instruction: "[I]f you go down to the very bottom of it, it will actually define what mutual combat is.[11]  It's pretty much the same idea that we all have which is where . . . two parties agree to fight, either that can be implied agreement or express agreement."

The prosecutor further argued:

So let's concede that . . . Mr. Hernandez was trying to . . . call [Samaniego] over and engage him in mutual combat of some sort, right, that he is out there waving at him, telling him to come over.

Well, Mr. Samaniego by then driving over there is engaging in mutual combat.  And not only that, this is giving him time to reflect, premeditate and deliberate. . . . And though not supported by any facts, let's say, Mr. Hernandez goes in there and tells Jack Urzua hey, there's a gangster outside and then hides in the bathroom.

Mr. Urzua gets out and he is now engaging in mutual combat, right?

And now both parties are engaging in mutual Combat.

Defense counsel did not object to this argument.

---

[11]    The prosecution was referring to language in CALCRIM No. 3471.  (See footnote 12, *ante*.)

**B. Relevant law**

Prosecutorial error "occurs, as a matter of state law, when a prosecutor 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854 (*Daveggio*).) "Federal constitutional error occurs only when the prosecutor's actions 'comprise a pattern of conduct that is serious and egregious, such that the trial is rendered so unfair that the resulting conviction violates the defendant's right to due process of law.' " (*Ibid.*)

A prosecutor is given wide latitude during closing argument. (*People v. Stanley* (2006) 39 Cal.4th 913, 951.) "The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." (*Ibid.*) When challenging a prosecutor's remarks to the jury, a defendant must show that, " 'in the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied' " the comments in an improper or erroneous manner. (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).) In this inquiry, reviewing courts do not lightly infer that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. (*Ibid.*)

**C. Analysis**

Samaniego argues the prosecutor erred by "urg[ing] the jury to find mutual combat without finding the required intent and agreement by both parties to fight[.]" This contention is belied by the record. The prosecutor told the jury that mutual

combat occurs when "two parties agree to fight," and "that can be implied agreement or express agreement." The prosecutor also discussed Samaniego's intent to engage in mutual combat and opportunity to deliberate while driving to the barbershop. As the prosecutor further explained, when Urzua exited the shop, he and Samaniego engaged in mutual combat. The prosecutor's comments accurately summarized evidence presented at trial. Consequently, there is no reasonable likelihood that the jury understood or applied the prosecutor's comments in an improper manner. (See *Centeno*, *supra*, 60 Cal.4th at p. 667.)

Because we reach the merits and conclude there was no prosecutorial error, we need not address forfeiture, whether Samaniego's counsel was ineffective by not objecting, or whether the purported prosecutorial error was prejudicial.

## VI. We are unpersuaded that the prosecutor erroneously obtained a favorable ruling to admit gang evidence

Samaniego argues the prosecutor, through misrepresentations at an in-limine hearing, obtained a favorable ruling to admit gang evidence. We are unpersuaded. The record does not affirmatively demonstrate the prosecutor mischaracterized the evidence showing Samaniego was a gang member, and in any event, the purported misconduct was harmless because defense counsel offered to stipulate that Samaniego indeed was a gang member.

25

## A. Additional background
### 1. Motion to admit gang evidence

The prosecution filed a motion to admit gang evidence. Defense counsel filed a response arguing the gang evidence should be limited to the stipulated fact that Samaniego was a documented Opal Street gang member. Additional evidence that Samaniego or others were members of the Opal Street gang, defendant argued, would be highly prejudicial.

At a hearing on the motion, the trial court tentatively ruled gang evidence was admissible; "[t]he question [was] to what extent." The prosecutor stated he intended to adduce evidence regarding a 2019 traffic stop, which Officer Zaragoza "used . . . to further establish his opinion that Mr. Samaniego was a member of Opal Street." The court asked, "what about [Officer Zaragoza's contacts with Samaniego] made him think it's gang involved?" The prosecutor responded, "that he's with another gang member from Opal Street."

The court then asked the prosecutor, "what do we expect [Officer] Zaragoza to say?" The prosecutor responded, "basically that he has had several interactions with Mr. Samaniego where he's hanging out with gang members and that he knows him to be a member of that gang."

The following colloquy ensued:

> The court: Is he going to say that Mr. Samaniego has ever admitted to being in that gang?
>
> [The prosecutor]: Yes.
>
> [Defense counsel]: Did he say that at the prelim?
>
> [The prosecutor]: Yeah. And he completed –
> there's some FI cards as well with his moniker.
>
> The court: Filled out by Zaragoza?

[The prosecutor]: Yeah.

The court: And he claims that Mr. Samaniego admits he's an Opal Street Loco?

[The prosecutor]: Yeah.

Defense counsel reasserted that the gang evidence was more prejudicial than probative because the defense was "conceding that Samaniego is an Opal Street gang member."

The court overruled the defense objection, finding the relevance of gang evidence was "not entirely foreclosed by the stip[ulation]."

2. **Officer Zaragoza's preliminary hearing and trial testimony**

At the preliminary hearing, Los Angeles Police Officer Ruben Zaragoza, a gang expert, testified he had had about four encounters with Samaniego. He would see Samaniego in Opal Street territory. The prosecutor asked, "[t]hroughout your encounters with Mr. Samaniego and your discussions with him, did you form an opinion as to whether or not he was a member of any particular gang?" Officer Zaragoza answered in the affirmative and opined that Samaniego was an Opal Street gang member.

At trial, Officer Zaragoza testified that he had seen Samaniego on Opal Street on multiple occasions, that he had had conversations with Samaniego, and that he had seen Samaniego around other people identified as Opal Street gang members. One such contact was in 2019, when Officer Zaragoza conducted a traffic stop of a car in which Samaniego was a passenger. The prosecutor asked Officer Zaragoza if based on his experience with Samaniego, he had any opinion whether Samaniego was a gang

27

member, and Officer Zaragoza opined that Samaniego was an Opal Street gang member.

### 3. Trial testimony of Officer Menasakanian and Detective Gonzalez

Officer Tadeh Menasakanian, a gang expert, testified that in 2021, he conducted a traffic stop of Rafael Lopez. Lopez wore an Orioles baseball hat, indicating affiliation with the Opal Street gang. The prosecutor asked if there were other indications Lopez was a member of Opal Street. Officer Menasakanian responded, "yes. He would openly talk about it with me." Lopez also had gang tattoos. Officer Menasakanian arrested Lopez, and allowed him to give his car to somebody in lieu of it being towed. Lopez made a phone call, and Samaniego arrived to take possession of the car. Lopez referred to Samaniego as "Happy."

Detective Keith Gonzalez testified that Mauricio Gonzalez—Samaniego's companion at the time of the shooting—had a tattoo of the letters "OSL," for Opal Street Locos, on his stomach.

### B. Analysis

Samaniego contends that, at the in-limine hearing, the prosecutor erred by misrepresenting the facts of the 2019 traffic stop. According to Samaniego, the prosecution falsely asserted Officer Zaragoza stated at the preliminary hearing that Samaniego was with an Opal Street member. Samaniego also argues the prosecutor misstated the gang evidence by incorrectly asserting that Samaniego admitted he was a gang member. He further argues: "Simply put, living on a street on a block claimed by a small, local gang, and knowing two of its members around

28

[Samaniego's] age, does not establish one's gang membership. To overcome this, the prosecutor, whether intentionally or inadvertently, misled the trial court to obtain a favorable in-limine evidentiary ruling that he relied on for guilt, thus violating" Samaniego's rights under state law and under federal constitutional law.

We are unpersuaded. The record demonstrates Officer Zaragoza based his opinion that Samaniego was a member of the Opal Street gang, in part, on his conversations with Samaniego. Defense counsel was free to cross-examine Officer Zaragoza on what those discussions were but elected not to. On this record, Samaniego has not satisfied his burden of demonstrating that the prosecutor made misleading statements to the court.

Moreover, the prosecution's assertion was harmless. "In order to demonstrate that prosecutorial error under was prejudicial under state law, the defendant bears the burden of showing a reasonable likelihood of a more favorable verdict absent the error. (*Daveggio, supra*, 4 Cal.5th at p. 854.) Under federal law, prosecutorial error is prejudicial unless it was harmless beyond a reasonable doubt. (*Ibid*.) Samaniego cannot show prejudice under either standard because the defense was going to *stipulate* that Samaniego was an Opal Street gang member. In other words, evidence of Samaniego's gang membership was inevitably going to be introduced at trial.[12] For

---

[12] We note that it was not erroneous for the court to allow evidence of Samaniego's gang membership. This evidence was relevant and admissible to prove the prosecution's theory of the case—that Samaniego entered enemy gang territory knowing that doing so could lead to violent confrontation and death, and welcomed and invited those risks.

this same reason (i.e., that Samaniego cannot demonstrate prejudice), he likewise cannot succeed in demonstrating that his trial counsel was prejudicially ineffective. (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1020, fn. 2.)

## VII. The jury's findings of premeditation and deliberation are supported by substantial evidence

We reject Samaniego's assertion that the jury's findings of premeditation and deliberation are unsupported by substantial evidence.

### A. Relevant law

The unjust killing of a human being is presumed to be murder in the second, rather than first, degree. (*People v. Anderson* (1968) 70 Cal.2d 15, 25, 73.) First degree murder has the additional elements of willfulness, premeditation, and deliberation. (*People v. Gomez* (2018) 6 Cal.5th 243, 282.) "These elements require 'more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death.' " (*Ibid.*)

"The very definition of 'premeditation' encompasses the idea that a defendant thought about or considered the act beforehand." (*People v. Pearson* (2013) 56 Cal.4th 393, 443.) " ' "Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance.' " (*People v. Casares* (2016) 62 Cal.4th 808, 824, disapproved on another ground in *Dalton*, *supra*, 7 Cal.5th at p. 214.) "Premeditation and deliberation can occur in a brief

interval." (*People v. Memro* (1995) 11 Cal.4th 786, 863.) Some basic categories of evidence sufficient to support a finding of premeditation and deliberation include planning, motive, and a deliberate manner of killing. (*People v. Morales* (2020) 10 Cal.5th 76, 88–89.) This list of categories is not exhaustive, and reviewing courts need not accord these categories any particular weight. (*Id.* at p. 89.)

In assessing Samaniego's sufficiency argument, we review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find premeditation and deliberation beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319; *People v. Staten* (2000) 24 Cal.4th 434, 460.) Substantial evidence is evidence that is " 'reasonable in nature, credible, and of solid value' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576) and includes circumstantial evidence and reasonable inferences based on that evidence (*In re James D.* (1981) 116 Cal.App.3d 810, 813).

In reviewing a sufficiency claim, we "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) In conducting this analysis, we do not substitute our own evaluation of witness credibility for that of the finder of fact. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) A defendant "bears an enormous burden' when challenging the sufficiency of the evidence." (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

**B. Analysis**

Applying the above-stated principles, we conclude Samaniego cannot satisfy his enormous burden of showing no

31

reasonable jury could find premeditation and deliberation. After initiating an encounter with rival gang member Hernandez, Samaniego, armed with a gun, followed Hernandez to a rival gang stronghold, called out the name of his gang, then engaged in a violent altercation with Urzua that ended with him pistol-whipping then shooting and killing Urzua. On these facts, the jury could reasonably infer that Samaniego premeditated and deliberated the murder. (See, e.g., *People v. Lee* (2011) 51 Cal.4th 620, 636 [jury findings of premeditation and deliberation were reasonably supported by the fact that "defendant bought a loaded handgun with him on the night [the victim] was killed, indicating he had considered the possibility of a violent encounter"]; *People v. Martinez* (2003) 113 Cal.App.4th 400, 413 [motive for a shooting involving gang rivalry, coupled with the defendant's deliberate conduct aiming a gun at a rival gang member before firing the weapon, reasonably supported jury findings of premeditation and deliberation].)

## VIII. We discern no prejudicial cumulative error

Samaniego lastly argues that reversal is required due to prejudicial cumulative error, which deprived him of a fair trial. We reject this contention. Because we find no individual errors, it follows logically that there was no cumulative error. (*People v. Williams* (2015) 61 Cal.4th 1244, 1291 ["We have either found no error or, in those instances where error has been . . . assumed, no prejudice. Thus, there is no prejudice to accumulate."].)

### DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

TAMZARIAN, J.

We concur:

MORI, Acting P. J.

COGLIATI, J.*

---

\*      Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

33